## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **WILLIAM BURROW and OMA LOUISE BURROW,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **CASE NO: _____** |
| **v.** | ) ) | **CLASS ACTION** |
| **FORJAS TAURUS S.A. and BRAZTECH INTERNATIONAL, L.C.,** | ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) ) | |

## CLASS ACTION COMPLAINT

COME NOW, the Plaintiffs William Burrow and Oma Louise Burrow ("Plaintiffs"), individually and on behalf of all others similarly situated, and assert their class action complaint against Defendants Forjas Taurus, S.A. and Braztech International, L.C. (collectively, "Taurus" or the "Taurus Defendants") and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this nationwide class action on behalf of themselves and all other individuals who own certain Revolvers which were designed, manufactured, assembled, imported, and marketed by the Taurus Defendants in Florida and distributed or sold by the Taurus Defendants in Florida and throughout the United States. For the purposes of the claims made herein, the Revolvers are considered an inherently dangerous commodity.

2.      All of the Revolvers contain at least one defect which renders them unreasonably dangerous and unfit for their intended use. As more fully described below, one of the two internal safety features that are intended to prevent the Revolvers in the event of a firing a

cartridge from hammer spur impact (a "drop-fire") is defectively designed and manufactured such that it is prone to malfunction, thereby not preventing a drop-fire. This defect can result in the Revolvers firing unexpectedly and against the intentions of the Revolver's handler. Upon information and belief, and based on reasonable investigation, this defect will repeatedly and verifiably manifest in the Revolvers.

3.       In addition, some of the Revolvers contain a second defect that causes the other internal safety feature to malfunction, thereby allowing a drop-fire to occur. In the Revolvers where this second defect is present, there is <u>no</u> internal safety feature or mechanism to prevent the Revolver from firing a cartridge from hammer spur impact.

4.       In filing this lawsuit, Plaintiffs and the Class Members do not disparage the Second Amendment's right to bear arms. Rather, Plaintiffs and the Class Members seek to hold accountable the Taurus Defendants for the design, lack of testing, manufacture, assembly, marketing, supply, warranty, distribution, misrepresentation, and sales of the Revolvers which are defective and unreasonably dangerous as described herein. Instead of impinging upon the Second Amendment, this lawsuit is brought by and on behalf of individuals who have lawfully exercised their Second Amendment right to bear arms.

5.       This class action alleges, among other things, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 <u>et seq.,</u> negligence, strict liability, breach of express warranties, breach of implied warranties, violation of the Magnuson-Moss Warranty Act ("MMWA"), fraudulent inducement, suppression, negligent failure to disclose, failure to warn, concealment, misrepresentation, damages and declaratory relief in connection with the defects which are common to the Revolvers. The Taurus Defendants' conduct which gives rise to these causes of action encompasses the design, testing, manufacture,

assembly, marketing, supply, warranty, misrepresentation, concealment, distribution and/or sales of the Revolvers.

6.      The Revolvers are defective and unreasonably dangerous because the common design and manufacture of the Revolvers renders them prone to unintended discharge of the Revolvers. The defects result from the inadequate design, manufacturing, and testing of the Revolvers, and the continued failure of the Defendants to remedy the defects. The existence of one or both of the defects creates an unreasonably dangerous situation for a person owning and/or possessing a Revolver and substantially reduces or eliminates completely, the value of the Revolvers.

7.      The Taurus Defendants have never remedied the defects, have never issued an effective and complete warning to the public or recall of the Revolvers, and continue to falsely represent to the public that the Revolvers are safe and reliable. In fact, the Taurus Defendants are aware that individuals have been seriously injured as result of one or both of the defects, and it is only a matter of time before more individuals are seriously injured or killed.

8.      At all times relevant to this action, the Taurus Defendants had a duty to disclose and warn Plaintiffs and Class Members truthfully and accurately, and not to conceal or misrepresent such truth, about the defects. Notwithstanding this duty, and in violation thereof, the Taurus Defendants carelessly and negligently failed to disclose to and warn Plaintiffs and Class Members, and concealed and misrepresented the truth, about the Revolvers and the defects.

9.      At all relevant times to this action, the Taurus Defendants fraudulently concealed and intentionally failed to warn Plaintiffs and Class Members of the defects with the intent to deceive the Plaintiffs, Class Members, and general public without knowledge of the defects. The Taurus Defendants falsely and fraudulently represented to Plaintiffs and Class Members that

their Revolvers were safe for normal and intended use, when in fact their Revolvers were not safe for normal and intended use.

10.      At all relevant times to this action, the Taurus Defendants have willfully, knowingly, and/or recklessly committed unfair or deceptive acts or practices in Florida for the express willful purpose of wrongfully concealing the defects and their knowledge of it in violation of the FDUTPA.

11.      At all times relevant to this action, the Taurus Defendants conspired among themselves and with others to conceal from the public, Plaintiffs, and Class Members the defects the Taurus Defendants' efforts to understate or misrepresent the nature of the risk created by the defects.

12.      The defects are latent, and the Revolvers are defective in a way that would not be apparent to Plaintiffs and Class Members.  Further, the cause of the defects originates from the common design and manufacture of the Revolvers, and Plaintiffs and Class Members would not and could not know of the defects by the exercise of reasonable diligence.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) in that the amount in controversy exceeds $5,000,000, exclusive of interest and costs and diversity of citizenship exists between the named Plaintiffs and Defendants. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

14.      Diversity of citizenship exists in this case for purposes of subject matter jurisdiction. The named Plaintiffs are citizens of Alabama and none of the Taurus Defendants are citizens of Alabama. Defendant Braztech International, L.C. ("Braztech") is a citizen of Florida

as it was organized under Florida law and has its headquarters and/or principal places of business in Miami, Florida.  Forjas Taurus, S.A. ("Forjas Taurus") is a citizen of Brazil as it is a Brazilian corporation with its principal place of business at Avenida de Forte, 511, Porto Alegre/RS, Brazil.

15.       This Court has personal jurisdiction over each of the Taurus Defendants.

16.       This Court has personal jurisdiction over Braztech because it is a Florida company, has its headquarters and/or principal places of business in Miami, Florida and is engaged directly and through its agents in systematic and ongoing business transactions in the State of Florida and within this District, including but not limited to, the design, testing, manufacture, import, assembly, marketing, supply, warranty, distribution, misrepresentation, and sales of the Revolvers as well as other conduct in Florida as described herein.

17.       This Court has specific and general personal jurisdiction over Defendant Forjas Taurus pursuant to the Florida long-arm statute, Fla. Stat. §§ 48.193(1)(a) & (2) (2013). Defendant Forjas Taurus, directly and by and through its agents, including but not limited to Defendants Taurus Manufacturing and Taurus Holdings, has engaged in systematic and ongoing business transactions in the State of Florida and within this District.  Defendant Forjas Taurus, directly and by and through its agents, including but not limited to Defendants Taurus Manufacturing and Taurus Holdings, has had continuous and substantial business connections in the State of Florida, including, upon information and belief, conducting business with individuals located in this District.

18.       This Court has specific personal jurisdiction over Defendant Forjas Taurus because Defendant Forjas Taurus, directly and by and through its agents, including but not limited to Braztech, as more fully described herein, has:

(a)      operated, conducted, engaged in, or carried out a business venture in the State of Florida, including but not limited to, manufacturing the Revolvers and other firearms in Brazil under the "Rossi" brand name, importing the Revolvers and other firearms under the "Rossi" and "Taurus" brand names from Brazil into the State of Florida, distributing the Revolvers and other firearms in Florida and throughout the United States under the "Rossi" and "Taurus" brand names, and receiving revenues from such importation and distribution of the Revolvers and other firearms under the "Rossi" and "Taurus" brand names, such that specific personal jurisdiction arises under Fla. Stat. § 48.193(1)(a)(1);

(b)      committed various tortious acts within the State of Florida, including but not limited to, intentionally concealing the defects from Plaintiffs and Class Members residing inside and outside of Florida, such that specific personal jurisdiction arises under Fla. Stat. § 48.193(1)(a)(2);

(c)      caused injury to persons within the State of Florida while it was engaged in solicitation of service activities within the State of Florida, including but not limited to, injury to Class Members in Florida caused by the defects while Defendant Forjas Taurus solicited service activities within Florida, such that specific personal jurisdiction arises under Fla. Stat. § 48.193(1)(a)(6)(a); and

(d)      caused injury to persons within the State of Florida arising out of an act or omission by it outside of the State of Florida while products, materials, or things processed, serviced, or manufactured by it in Brazil and elsewhere were used or consumed within the State of Florida in the ordinary course of commerce, trade, or use, including but not limited to, causing injuries to Class Members residing in Florida arising out of the design, manufacture, distribution, and marketing of Revolvers outside of Florida while Revolvers processed,

6

serviced, or manufactured by Defendant Forjas Taurus in Brazil and elsewhere were used or consumed within Florida in the ordinary course of commerce, trade, or use, such that specific personal jurisdiction arises under Fla. Stat. § 48.193(1)(a)(6)(b).

19.       This Court has general personal jurisdiction over Defendant Forjas Taurus because, as described more fully herein, it has engaged in substantial and not isolated activity within the State of Florida, including but not limited to, the continuous, ongoing, extensive importation of thousands of Revolvers and other firearms into the State of Florida from Brazil under the "Rossi" and "Taurus" brand names and distributing the Revolvers and other firearms in Florida and throughout the United States under the "Rossi" and "Taurus" brand names, such that general personal jurisdiction arises under Fla. Stat. § 48.193(2).

20.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) as to Braztech because it resides in this judicial district.  Venue is further proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as to all the Taurus Defendants because as described herein a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. The Taurus Defendants regularly and systematically conduct business in Florida and in this judicial district, including but not limited to, the continuous, ongoing, extensive importation of thousands of Revolvers and other firearms into the State of Florida from Brazil under the "Rossi" and "Taurus" brand names and distributing the Revolvers and other firearms in Florida and throughout the United States under the "Rossi" and "Taurus" brand names. Moreover, upon and information belief, much of the challenged conduct surrounding the Taurus Defendants' defective Revolvers occurred or emanated from Florida. Upon information and belief, the fraud, deception, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts in the distribution, sale, and/or advertisement of the Revolvers have

their origins in Florida. Upon information and belief, the corporate decision not to disclose, but rather to misrepresent, the known defects was made by the Taurus Defendants in Florida. In addition, venue is proper for the claims arising out of Florida's Deceptive and Unfair Trade Practices Act because the statute applies to any company engaging in any of the activities regulated by the FDUPTA within the State of Florida and as alleged herein each of the Taurus Defendants engaged in such activities within Florida. Venue is further proper in this District as to Defendant Forjas Taurus pursuant to 28 § 1391(c)(3) because it is a Brazilian corporation and a defendant not resident in the United States may be sued in any judicial district.

## PARTIES

21.     Plaintiff William Burrow is over the age of 21 and is a citizen of Jefferson County, Alabama. William Burrow is one of the owners of a Revolver, in particular a Rossi Model R35102, which was designed, manufactured, assembled, to be tested, marketed, imported, warranted, distributed, and sold by the Taurus Defendants.

22.     Plaintiff Oma Louise Burrow is over the age of 21 and is a citizen of Jefferson County, Alabama. Oma Louise Burrow is one of the owners of a Revolver, in particular a Rossi Model R35102, which was designed, manufactured, assembled, to be tested, marketed, imported, warranted, distributed, and sold by the Taurus Defendants.

23.     Defendant Forjas Taurus is a Brazilian corporation with its principal place of business at Avenida de Forte, 511, Porto Alegre/RS, Brazil and Forjas Taurus manufactures the Revolvers and other firearms in Brazil under the "Rossi" brand name and distributes the Revolvers and other firearms in Florida and throughout the United States under the "Rossi" brand name via Defendant Braztech.

24.      Defendant Braztech is a Florida corporation, operating and conducting business in Florida. Defendant Braztech's principal place of business is in Miami, Florida. Braztech is in the business of manufacturing, selling, and distributing firearms, including the Revolvers, in Florida and throughout the United States. In addition, Braztech assembled, marketed, imported, and distributed the Revolvers in Florida and elsewhere.

25.      The Taurus Defendants' businesses and operations are intertwined, and they act as agents of each other in the design, manufacture, assembly, testing, distribution, sale, and warranty of the Revolvers and other firearms.  The full nature and extent of their relationship has not been disclosed to the general public or to the Plaintiffs.  Upon information and belief, the Taurus Defendants are contractually obligated for each other's liabilities.  They are essentially one entity with regard to the allegations in this Complaint.

## COMMON FACTUAL ALLEGATIONS

26.      Defendant Forjas Taurus manufactures "Rossi" branded .38 Special revolvers and .357 Magnum revolvers in Sao Leopoldo, Brazil.  Defendant Braztech is the exclusive North American importer and distributor of Rossi firearms.

## The Revolvers

27.      The Revolvers are "Rossi" branded Models R35102, R35202, R85104, R97206, R97104, R46202, R46102, for use with .38 Special cartridges.  The Revolvers' swing-out cylinder is designed to hold either five (5) or six (6) cartridges.  They all have the same owner's manual.

28.      The Revolvers' design is intended to have two internal safety mechanisms to prevent the Revolver from firing a cartridge in the event of a hammer spur impact:

a.      Alignment of the hammer's "rebound slide seat" -- A metal tab located at the bottom of the hammer should align with the rebound slide's "hammer seat," a metal tab located on the top of the rebound slide.  When the Revolver's hammer is in the rebound or rest position, away from contact with a chambered cartridge primer, the hammer seat and rebound slide seat should align and be in close contact with one another.  From this aligned position, a blow on the Revolver's hammer spur would have to deform the hammer seat material and rebound slide seat material significantly in order for the hammer to rotate forward and fire a cartridge.  The alignment of the two metal tabs prevents a drop-fire from occurring.

b.      A separate hammer block component is designed to slide in a machined interior groove made into the Revolver's side plate and to place a small plate of steel between the front face of the hammer and the frame of the revolver to prevent the revolver from firing from hammer impacts or drops.  When the trigger is not being pulled, the hammer block is located in its up-most position.  This position allows the hammer block plate to slide between the Revolver's hammer face and the frame.  In this position, the hammer block plate prevents the hammer from coming forward to fire a cartridge if the hammer is driven forward by a drop or impact.  When the trigger is pulled, a side post on the rebound slide travels in an angled groove at the end of the hammer block and pulls the hammer block down and away from its blocking position.  As long as the trigger is pulled back, the hammer block stays down and the hammer can snap forward and fire a cartridge.

**The Safety Defects**

29.    The Revolver has two defects ("the Safety Defects") that render the internal safety mechanisms inoperable.

30.    **Rebound Slide – Hammer Seat Defect:**  For the blocking function of the hammer seat – rebound slide seat alignment to be effective, the seats or tabs must be aligned vertically and fitted together to be in close contact when the hammer is in the rebound position. This fitting will provide the maximum material resistance to hammer rotation from a drop or sharp impact.  The Revolvers suffer from a design and/or manufacturing defect in that the seats or tabs, which are metal injection molded components, are improperly fitted or shaped.  As a result, the seats are not aligned and are misshaped so that the hammer can rotate forward and fire a cartridge even when the trigger is not pulled.

31.    **Hammer Block Defect**:  Certain Revolvers suffer from a second design and/or manufacturing defect relating to the hammer block.  In Revolvers with the Hammer Block Defect, the side plate has a hammer block groove that is too wide and angled forward too much. As a result, the location of the hammer block changes as it moves up-and-down and allows it to fall away from its normal blocking position and become trapped on the revolver's fame.  When it becomes trapped, the hammer block does not return to the blocking position when the trigger is released and, therefore, does not prevent a drop-fire.

32.    All of the Revolvers have compromised safety mechanisms and are more susceptible to drop fires as a result of the Rebound Slide – Hammer Seat Defect.  When the Revolvers have both the Rebound Slide – Hammer Seat Defect and the Hammer Block Defect, the internal safety mechanisms that should prevent a drop fire are completely ineffective.

11

**Defendants' Misrepresentations**

33.     The Taurus Defendants claim in their owner's manuals that the Revolvers are equipped with safety features to prevent drop fire incidents:

> The hammer is of the rebounding type, in which the firing pin is not thrust into contact with the chambered cartridge except when the trigger is pulled.  In addition, the hammer-trigger mechanism incorporates an interior hammer block which interposes a block of steel between the hammer nose and primer.  The hammer block is withdrawn only when the hammer is cocked, thus preventing an accidental discharge should the revolver be dropped, uncocked, and sustain a sharp blow on the hammer.
>
> Therefore, unlike most single-action revolvers, your Rossi revolver is mechanically safe when carried with the cylinder fully loaded.

34.     Despite these representations and assurances, the common design and manufacture of the Revolvers as described is defective and as a result the internal safety mechanisms are impaired or completely ineffective such that an unintended discharge is more likely when the Revolvers are dropped from a height at which the Revolvers are normally used.

35.     Since the design of the Rebound Slide – Hammer Seat Defect is common to all Revolvers and is found in all Revolvers, the use and/or maintenance of the Revolvers by Plaintiffs and Class Members have no effect on the defective design of the Revolvers and the damages resulting from the defective design.  Furthermore, the defectively manufactured side plate hammer block groove (the Hammer Block Defect) is machine cut and is not impacted by the use and/or maintenance of the Revolvers by Plaintiffs and Class Members.

36.     The Revolvers have common latent design and manufacturing defects, namely the Rebound Slide – Hammer Seat Defect and the Hammer Block Defect, such that if the Revolvers

work as designed they are still defective and Plaintiffs and Class Members would still be due relief.

**<u>Defendants' Knowledge of the Safety Defects</u>**

37.     Upon information and belief, for years, the Taurus Defendants have knowingly manufactured, marketed, and sold thousands of defective Revolvers with the Safety Defects to consumers throughout Florida and the United States.

38.     Upon information and belief, the Taurus Defendants consciously and intentionally decided not to recall and/or retrofit the defective Revolvers which they know are unreasonably dangerous and defective.

39.     Upon information and belief, discovery of internal documents from the Defendants will show that they have been aware of the problems with the Safety Defects since the early production of the Revolvers and such discovery will most likely reveal that Taurus has been aware of the Safety Defects since the Revolvers were first designed, manufactured, imported, tested, produced, and distributed in the United States.

40.     Defendants have not taken any steps to warn consumers in Florida or elsewhere in the United States about the dangers of using the Revolvers.

41.     The Safety Defects have manifested, sometimes causing serious bodily injury. The Defendants are and were aware of those manifestations (and upon information and belief, Defendants are and were aware of many more), but have refused to remedy the defects.

42.     Plaintiffs have filed this nationwide Class Action Complaint in order to seek declaratory relief and compensation for the damages of Plaintiffs and the proposed Class and to force the Taurus Defendants to act as responsible corporate citizens by educating their customers, the lawful possessors of the Revolvers and the public about the dangers of the

Revolvers, repairing the defects in the Revolvers, or paying to allow the Plaintiffs and the proposed Class to replace the Revolvers and/or repair and replace the defects in the Revolvers on their own.

### PLAINTIFFS WILLIAM AND OMA LOUISE BURROW FACTS

43.    Plaintiffs William Burrow and Oma Louise Burrow (the "Burrows") own one of the Revolvers, a Rossi model R35102 revolver, S/N EX43410.  Mr. Burrow purchased the Revolver new from Academy Sports + Outdoors on October 26, 2012 for $259.99 ("Plaintiffs' Revolver").  Plaintiffs' Revolver has the Safety Defects that are common to the Revolvers.

44.    While the Burrows' primary residence is in Jefferson County, Alabama, the Burrows also own a farm in north Alabama.  When working on the farm, the Burrows sometimes encounter coyotes or wild dogs and need protection from same.  Thus, the Burrows decided that they would purchase a handgun that would allow them to protect themselves from attack.  The Burrows considered different guns but ultimately decided to purchase the Rossi model R35102 revolver, S/N EX43410.  The Burrows are safety conscious.  A deciding factor in making this purchase were the Taurus Defendants' representations that "Rossi handguns are designed and made to offer maximum safety when correctly used," and that:

> Your Rossi revolver is equipped with an exposed hammer which serves as an immediate safety device, indicating instantly by sight or touch whether the revolver is cocked.
> The hammer is of the rebounding type, in which the firing pin is not thrust into contact with a chambered cartridge except when the trigger is pulled. In addition, the hammer-trigger mechanism incorporates an internal hammer block which interposes a block of steel between the hammer nose and primer. The hammer block is withdrawn only when the hammer is cocked, thus preventing an accidental discharge should the revolver be dropped, uncocked, and sustain a sharp blow on the hammer.

Therefore, unlike most single - action revolvers, your Rossi revolver is mechanically safe when carried with the cylinder fully loaded.
Finally the revolver cannot be cocked unless the cylinder is fully latched shut, nor can the cylinder be opened if the revolver is cocked.

45.      In February, 2014, the Burrows had spent the day working at their farm.  They took the Plaintiffs' Revolver with them.  The Plaintiffs' revolver was loaded and was secured in a holster, with the holster's strap securely fastened around the gun's hammer, as depicted here:



At the end of the day, the Burrows arrived back home at their primary residence.  Once parked in the garage, they began removing things from their vehicle to take inside the house.  Among the things being so retrieved by Mrs. Burrow was the Plaintiffs' Revolver.  As Mrs. Burrow was carrying the Plaintiffs' Revolver through the garage, she accidentally dropped it.  The Plaintiffs' Revolver struck the garage's concrete floor and fired as a result.  The bullet struck Mrs. Burrow in the vicinity of her knee.[1]  At the time of the "drop-fire" incident, the Plaintiffs' Revolver was still secured in its holster as depicted above.  A hole can now be observed in the end of the holster, caused by the same bullet that struck Mrs. Burrow.

---

[1] The Burrows have not pursued and do not intend to pursue a "personal injury" claim.  Rather, they are hereby waiving any personal injury claim.  They have chosen instead to prosecute this class action in order to, among other reasons, prevent others from suffering similar injuries.

46.     The design and manufacture of the Plaintiffs' Revolver as it relates to the Safety Defects is the same as all the Revolvers, and, as a result, it did not prevent an unintended discharge when it was dropped from a height at which the Revolvers are normally used.

## CLASS DEFINITION AND CLASS ACTION ALLEGATIONS

47.     Plaintiffs bring this suit as a nationwide class action on behalf of themselves and all others similarly situated pursuant to Rules 23(a), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure. The Class that Plaintiffs seek to represent is defined as follows:

### All individuals in the United States who own a Revolver.

48.     Subject to additional information obtained through further investigation and discovery to be conducted, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the Class are the Taurus Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by the Taurus Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Taurus Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family; and persons who seek recovery for physical injuries suffered as a result of a defective Revolver.

49.     Numerosity:   The Class is composed of thousands of persons across the United States, the joinder of whom in one action is impractical. While the exact number and identity of Class Members are not presently known, they can be identified through the review of records in the Taurus Defendants' possession, custody and control, and/or through other formal discovery. Plaintiffs are informed and believe that thousands of Revolvers with the defects have been manufactured and sold in Florida and throughout the United States. Consequently, the

individuals in the Class are so numerous, consisting of at least one hundred thousand Class Members, that the sheer number of aggrieved persons makes joinder of all such persons impracticable, and the disposition of their claims in a class action, rather than in individual actions, will benefit the parties and the Court and is the most efficient and fair way to resolve the controversy.

50.     <u>Commonality</u>:  Defendants have engaged in a standardized course of conduct that affects all Class Members. The critical question of law and fact common to the Plaintiff Class that will materially advance the litigation is whether the Revolvers are inherently defective, contrary to the expectations imparted by the Taurus Defendants through their representations, omissions, and suppression. Furthermore, other questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

(a)     Whether the common design of the Revolvers as described is defective;

(b)     Whether the common design of the Revolvers as described prevents the hammer from firing a cartridge should the Revolvers be dropped;

(c)     Whether the Rebound Slide – Hammer Seat Defect, which is present in all the Revolvers, substantially impairs the internal safety mechanism of the Revolvers;

(d)     Whether the Hammer Block Defect, which is present in the Plaintiffs' Revolver, is a manufacturing or design defect;

(e)     Whether the Revolvers are defective because they are prone to fire when dropped from a height at which they are normally used, even when the trigger is not pulled and the hammer is not cocked;

(f)      Whether the Taurus Defendants violated the Florida Deceptive and Unfair Trade Practices Act by,  among other things, engaging in unfair, unlawful, or fraudulent practices in connection with the failure to disclose the material and life-threatening Safety Defect in the Revolvers;

(g)      Whether the Taurus Defendants have been wrongfully and/or unjustly enriched as a result of the conduct set forth in the Complaint;

(h)      Whether Plaintiffs and the Class are entitled to equitable relief, including but not limited to restitution;

(i)      Whether the design or manufacturing of the Revolvers can cause the defects, and thus the Revolvers are not suitable for their intended use;

(j)      Whether the Taurus Defendants knew or should have known that the Revolvers were defective;

(k)      Whether the Taurus Defendants had a duty to Plaintiffs and the Class to disclose the true nature of the Revolvers;

(l)      Whether the Taurus Defendants had a duty to recall the Revolvers;

(m)      Whether the Taurus Defendants falsely represented that the Revolvers were of a certain standard, quality, and grade, when in fact, they were not;

(n)      Whether the Taurus Defendants suppressed and concealed material information regarding the true characteristics and defective nature of the Revolvers;

(o)      Whether the Taurus Defendants' false representations and suppression of the defects was knowing, intentional, reckless, and/or malicious;

(p)      Whether Plaintiffs and the Class Members are entitled to compensatory, statutory, punitive, exemplary, and/or other forms of damages, and/or other monetary relief and, if so, in what amount;

(q)      Whether the Taurus Defendants breached their Express Warranties to Plaintiffs and the Class;

(r)      Whether the scope of the Taurus Limited Warranty requires the Taurus Defendants to notify the owners of Revolvers regarding the defects and repair and/or retrofit the Revolvers;

(s)      Whether the Taurus Defendants breached their Implied Warranties to Plaintiffs and the Class; and

(t)      Whether Plaintiffs and the Class members are entitled to an order (1) permanently enjoining the Taurus Defendants from manufacturing, assembling, importing, marketing, advertising, distributing, and selling Revolvers, (2) requiring the Taurus Defendants to recall all Revolvers, and (3) requiring the Taurus Defendants to compensate Plaintiffs and Class Members.

51.      Typicality:     Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of the Taurus Defendants' conduct in designing, manufacturing, testing, marketing, advertising, warranting and selling the defective Revolvers. The defects of the Revolvers render each Class Member's claims, legal theory, and injury common and typical.

52.      Adequate Representation:     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class.

Plaintiffs have retained counsel and law firms that are experienced in the prosecution of complex class actions.

53.     <u>Predominance and Superiority</u>:  The class action in this instance is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and this Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of the Class is impracticable. The common liability issues in this Class Action may be resolved efficiently on a class-wide basis.  Should individual Class Members be required to bring separate actions, **<u>assuming Class Members were aware of the latent defects</u>**, this Court and/or courts throughout the nation would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. The common design defects of the Revolvers are latent defects, and the Revolvers are defective in a way that would not be apparent to Plaintiffs and Class Members. As a result, Class Members are unaware of the defects and their claims against Defendants as a result of the latent defects; therefore, without notice of the defects, a failure of justice will occur in the absence of a class action.

54.     <u>Declaratory and Injunctive Relief</u>:   The class action is also appropriate because the Taurus Defendants have acted or refused to act on grounds generally applicable to the class, and the Plaintiffs and putative class seek, <u>inter alia</u>, equitable remedies with respect to the class as a whole. Indeed, the prosecution of separate actions for injunctive relief would create the risk

of establishing incompatible standards of conduct for the Taurus Defendants. In addition, individual actions for injunctive relief may, as a practical matter, be dispositive of the interests of class members, who would not be party to those actions.

## ESTOPPEL AND TOLLING OF STATUTE OF LIMITATIONS

55.     The Taurus Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of fraudulent concealment, which include the Taurus Defendants' intentional concealment from Plaintiffs, Class Members, and the general public that the Revolvers are defective, while continually marketing the Revolvers with the defects described herein.

56.     Given the Taurus Defendants' affirmative actions of concealment by failing to disclose this known but non-public information about the defects – information over which the Taurus Defendants had exclusive control – and because Plaintiffs and Class Members therefore could not reasonably have known that the Revolvers were defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### COUNT ONE
**(Violation of the Florida Deceptive and Unfair Trade Practices Act)**

57.     Plaintiffs, individually, and on behalf of all others similarly situated, incorporate by reference the paragraphs 1-56 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

58.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. (the "Act" or "FDUTPA").  The stated purpose

of the Act is to "protect the consuming public. . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

59.     Plaintiffs and all Class Members are "consumers" and the transactions at issue in this Complaint constitute "'trade or commerce" as defined by Florida Statutes §§ 501.203(7) and (8), respectively. Florida Statute § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

60.     Consumers and the consuming public under the FDUTPA include Florida residents and non-residents of Florida and Florida has a strong interest in regulating the conduct of corporations headquartered within the state. There are no geographical or residential restrictions contained within the express language of the FDUTPA and the Act applies to Taurus Defendants regardless of where the distribution and/or sale of Revolvers occurred.

61.     In violation of the FDUTPA, the Taurus Defendants employed fraud, deception, false promise, misrepresentation and the knowing concealment, suppression, or omission of material facts in their distribution, sale, marketing, and/or advertisement of the Revolvers, including information in the Taurus Manuals, on the website of the Taurus Defendants, and the material facts as set forth in the following paragraph.  The actions occurred, at least in part, at the Taurus Defendants' facilities in Miami, Florida.

62.     Prior to and at the time the Taurus Defendants distributed the Revolvers from their headquarters in Florida for sale to the public they engaged in fraud, deception, false promises, misrepresentations, concealment, suppression, or omission of material facts in violation of the FDUTPA in the following ways: (a) represented that "Rossi revolvers are

22

designed and made to offer maximum safety when correctly used;" (b) represented that "Rossi revolvers are manufactured to perform properly with the original parts as designed;" (c) represented that "[t]he hammer is of the rebounding type, in which the firing pin is not thrust into contact with the chambered cartridge except when the trigger is pulled;" (d) represented that "the hammer-trigger mechanism incorporates an interior hammer block which interposes a block of steel between the hammer nose and primer" and that "[t]he hammer block is withdrawn only when the hammer is cocked, thus preventing an accidental discharge should the revolver be dropped, uncocked, and sustain a sharp blow on the hammer;" (e) represented that "unlike most single-action revolvers, your Rossi revolver is mechanically safe when carried with the cylinder fully loaded;" and (f) represented that "[b]efore shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards."  The Taurus Defendants concealed the defects from the public; and by distributing and/or selling the Revolvers, they impliedly represented to Plaintiffs and Class Members that the Revolvers are fit for the purpose for which they are intended and safe to use.  *See* Exhibit 1, Taurus Limited Warranty set forth in the Owner's Manual and Exhibit 2, Rossi Revolver Lifetime Repair Policy found at http://www.rossiusa.com/repair-policy.cfm.   These misrepresentations originated, at least in part, from the Defendants' headquarters in Florida.

63.      The misrepresentations, deception, false promises, knowing concealment, suppression, omission of material facts in their distribution, sale, marketing, and/or advertisement of the Revolvers, including information in the owner's manual and on the website of the Taurus Defendants were uniform as to Plaintiffs and each class member and the decisions involving misrepresentations, deception, false promises, knowing concealment, suppression, and omission of material facts were made by Taurus Defendants in Florida.

64.     The Taurus Defendants violated the FDUPTA by failing to disclose to and concealing from Plaintiffs, Class Members, prospective purchasers, and the public the defects in the Revolvers.

65.     The Taurus Defendants engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs, Class Members, and/or the general public would rely upon the concealment, suppression, or omission of such material facts.

66.     These misrepresentations, practices, and omissions of the material facts are likely to affect a consumer's choice of or conduct regarding the ownership and/or use of the Revolvers and the issue is not whether Plaintiffs and Class Members relied on the misrepresentations, practices, concealment, and omissions of the material facts, but whether the misrepresentations, practices, concealment, and omissions of the material facts were likely to deceive a consumer acting reasonably in the same circumstances and Plaintiffs and Class Members need not prove individual reliance. Since proof of reliance is not necessary, issues relating to causation and damages will be common to Plaintiffs and all Class Members. To the extent reliance is required by law, reliance and damages are sufficiently shown by the fact that Plaintiffs and Class Members own and/or use the Revolvers.

67.     The Taurus Defendants' concealment, suppression, or omission of material facts as alleged herein constitutes unfair, deceptive and fraudulent business practices within the meaning of the FDUTPA.

68.     The Taurus Defendants either knew, or should have known, that the Revolvers are defectively designed and/or manufactured and were not safe against accidental discharge and that serious injury or death could occur when a Revolver is dropped from a height at which it is

normally used. All of the Taurus Defendants' unfair or deceptive acts relate to their involvement in placing the Revolvers into the stream of commerce from their headquarters in Florida, knowing the Revolvers were not safe and that serious injury or death could occur because of the defects.

69.     Upon information and belief, the Taurus Defendants knew that, at the time the Revolvers left the Taurus Defendants' control, the Revolvers contained the Safety Defect described herein. At the time of manufacture, distribution, and/or sale, the Revolvers contained the common design defects. The defects reduced the effectiveness and performance of the Revolvers and rendered them unable to perform the ordinary purposes for which they were used as well as caused the resulting damage described herein.

70.     As a direct and proximate cause of the violation of the FDUTPA, described herein, Plaintiffs and Class Members have been injured in that they own and/or use Revolvers with the defects based on misrepresentations and nondisclosure of the material facts alleged herein, including but not limited to, nondisclosure of the defects.  Furthermore, Plaintiffs and Class Members are damaged because they did not receive a firearm with the characteristics, features, and capabilities as represented by the Taurus Defendants.  The Revolvers that were delivered to the Plaintiffs and Class Members have a lower market value than they would have had if the Defendants had delivered firearms that were not defective and had effective internal safety features.

71.     The Taurus Defendants' unlawful conduct is continuing, with no indication that the Taurus Defendants' unlawful conduct will cease.

72.     The Taurus Defendants' actions in connection with the designing, manufacturing, marketing, testing, and distributing of the Revolvers as set forth herein evidences a lack of good

25

faith, honesty in fact, and observance of  fair dealing so as to constitute unconscionable commercial  practices,  in violation of the FDUTPA, Fla. Stats. §§ 501.201, *et seq.*

73.     The Taurus Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud described herein. Said acts and practices on the part of the Taurus Defendants were and are illegal and unlawful pursuant to Florida Statute § 501.204.

74.     As a direct result and proximate result of the Taurus Defendants' violations of the FDUTPA, Plaintiffs and Class Members have suffered damages, regardless of whether the Revolvers have malfunctioned or manifested the defects in some way.  Plaintiffs and the Class Members are entitled to compensatory damages, including damages for the diminished value of the Revolvers. Further, Plaintiffs and Class Members are entitled to equitable and declaratory relief, damages allowed under FDUTPA, costs, the establishment of a common fund if necessary, and statutory attorney fees.

## COUNT TWO
### (Negligence)

75.     Plaintiffs, individually, and on behalf of all others similarly situated, incorporate by reference paragraphs 1-56 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

76.     At all times relevant to this action, the Taurus Defendants had the duty to exercise that degree of care that a reasonably prudent firearm manufacturer and/or distributor should use in the design, testing, selection, manufacture, assembly, marketing, supply, distribution and sales of Revolvers. Notwithstanding this duty, and in violation thereof, the Taurus Defendants negligently and carelessly designed, tested, selected, manufactured, assembled, marketed, supplied, distributed, and sold Revolvers with the defects.  As a direct and proximate result of

this breach of duty, individuals who own a Revolver are exposed to a substantial, clear, and unreasonable risk of serious injury or death.  In fact, although she does not seek any recovery related to a personal injury, Plaintiff Oma Louise Burrow suffered a personal injury because of the Taurus Defendants' negligence.

77.      Plaintiffs, on behalf of themselves, and the Class, demand judgment against the Taurus Defendants for compensatory damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

## COUNT THREE
### (Strict Liability In Tort – Restatement (Second) Of Torts § 402A)

78.      Plaintiffs, individually, and on behalf of all others similarly situated, incorporate by reference paragraphs 1-56 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

79.      The Taurus Defendants designed the Revolvers with the Safety Defect, rendering the Revolvers inherently dangerous and creating a substantial, clear, extreme and unreasonable risk of serious injury or death to Plaintiffs and Class Members. The Taurus Defendants manufactured, assembled, marketed, distributed, and sold the Revolvers with the defects. The Revolvers were in the same defective condition due to the defects from the time they left the Taurus Defendants' control until they reached the Plaintiffs and Class Members, all of whom use the Revolvers in the manner intended by the Taurus Defendants.

80.      The Revolvers were sold in substantial and unreasonably dangerous condition to an extent beyond that which would be contemplated by the ordinary consumer, including, Plaintiffs and Class Members.

81.      As a direct and proximate result of the facts alleged above, Plaintiffs and Class Members are exposed to a clear, substantial, and unreasonable risk of serious injury or death

from the defects and the Revolvers.  Furthermore, although she does not seek any recovery related to a personal injury, Plaintiff Oma Louise Burrow suffered a personal injury because of the Taurus Defendants' negligence.

82.     The Taurus Defendants are strictly liable in tort for all injuries, damages, and losses that have or may result from the unintentional and unwanted discharge of a Revolver, and for the cost of rendering the Revolvers safe.

83.     Plaintiffs, on behalf of themselves, and the Class, demand judgment against the Taurus Defendants for compensatory and punitive damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

## COUNT FOUR
### (Breach of Express Warranty)

84.     Plaintiffs, individually, and on behalf of all others similarly situated, incorporate by reference paragraphs 1-56 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

85.     The Taurus Defendants provide with each of the Revolvers express warranties which are made to every owner of a Revolver, including Plaintiffs and Class Members. The Taurus Defendants have memorialized these express warranties in writing. These express warranties are set forth in the owner's manual, the "Taurus Limited Warranty," the "The Rossi Revolver Lifetime Repair Policy," and the "Rossi Repair Policy" which are provided with the Revolvers and/or which are also published on the public website of the Taurus Defendants.  Each of the express warranties is a separate and independent express warranty made to Plaintiffs and Class Members.

86.      The Plaintiffs registered their Revolvers with the Taurus Defendants by submitting a signed "Warranty Card" to the Defendants.  The Plaintiffs are in privity with the Taurus Defendants.

87.      The express warranties made to the Plaintiffs and Class Members in the owner's manual include the following: (a) "Rossi revolvers are designed and made to offer maximum safety when correctly used;" (b) "Rossi revolvers are manufactured to perform properly with the original parts as designed;" (c) "[t]he hammer is of the rebounding type, in which the firing pin is not thrust into contact with the chambered cartridge except when the trigger is pulled;" (d) "the hammer-trigger mechanism incorporates an interior hammer block which interposes a block of steel between the hammer nose and primer" and that "[t]he hammer block is withdrawn only when the hammer is cocked, thus preventing an accidental discharge should the revolver be dropped, uncocked, and sustain a sharp blow on the hammer;" (e) "unlike most single-action revolvers, your Rossi revolver is mechanically safe when carried with the cylinder fully loaded;" and (f) "[b]efore shipment, your firearm was carefully inspected and test fired in order to ensure that it conformed to our specifications and standards."  The Taurus Defendants breached these express warranties by not providing a product which could provide the benefits described in this paragraph and as a result of the Taurus Defendants' breach of these express warranties, Plaintiffs and Class Members have been damaged.

88.      The express warranties made to the Plaintiffs and Class Members and set forth in the "Taurus Limited Warranty" include that "Braztech will service and/or repair all covered products free of charge."  Plaintiffs and Class Members are in privity of contract with the Taurus Defendants and/or are the express beneficiaries of the express warranties set forth in the "Taurus Limited Warranty" and these express warranties became part of the basis of the bargain. The

Taurus Defendants breached these express warranties by not providing a product which could provide the benefits described or be repaired, and, as a result of the Taurus Defendants' breach of these express warranties, Plaintiffs and Class Members have been damaged. Notwithstanding the express warranties described in this paragraph, Plaintiffs and the Class Members were denied the full benefit of the bargain.

89.     The express warranties made to the Plaintiffs and Class Members and set forth in the "The Rossi Revolver Lifetime Repair Policy" include that the Taurus Defendants "will repair, free of charge, any firearm manufactured or distributed by BrazTech International L.C."

90.     Prior to the filing of this lawsuit, the Plaintiffs notified the Defendants of the mechanical failure in their Revolver.

91.     The Taurus Defendants breached these express warranties by not providing a product which was not safe and which has not been and cannot be repaired.  As a result of the Taurus Defendants' breach of these express warranties, Plaintiffs and Class Members have been damaged.

92.     The Taurus Defendants provided the express warranties described above to Plaintiffs and Class Members.  Plaintiffs and Class Members are the express beneficiaries of the express warranties. To the extent required by law, the Taurus Defendants have expressly waived privity of contract as a requirement to the enforceability of any of their express warranties.

93.     Notwithstanding these express warranties, and in breach thereof, the Taurus Defendants designed the Revolvers with the Safety Defects, which rendered the Revolvers in breach of the express warranties, unmerchantable, nonconforming, and unsafe for normal use and created a clear, substantial, and unreasonable risk of serious injury or death to Plaintiffs and Class Members.

94.     The breach of the express warranties described above is a proximate cause of the Plaintiffs' and the Class Members' injuries, and the warranties have failed in their essential purpose.

95.     Plaintiffs, on behalf of themselves, and the Class, demand judgment against the Taurus Defendants for compensatory damages for themselves and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

## COUNT FIVE
### (Breach of Implied Warranty of Merchantability)

96.     Plaintiffs, individually, and on behalf of all others similarly situated, incorporate by reference paragraphs 1-56 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

97.     At all times mentioned herein, the Taurus Defendants designed, manufactured, marketed, distributed, and sold the Revolvers with the defects, and prior to ownership of the Revolvers by Plaintiffs and Class Members, the Taurus Defendants impliedly warranted to Plaintiffs and Class Members that the Revolvers were of quality and fit for the use for which they were intended, that the Revolvers were merchantable, would operate effectively, were safe for normal use, suitable for the ordinary and usual purposes for which they were intended, and would not create an unreasonable risk of injury to consumers.

98.     Plaintiffs and Class Members, in owning and/or using the Revolvers, relied upon the skill and judgment of the Taurus Defendants.

99.     The Revolvers are unfit for their intended use and are not of merchantable quality, as warranted by the Taurus Defendants, in that they had and/or have the propensities to fail to perform and protect, including but not limited to, accidentally discharging when dropped from a

normal height of intended use and have defective internal safety mechanisms such that a drop fire is not reasonably prevented.  Plaintiffs' Revolver caused Plaintiffs to sustain damages as herein alleged.

100.     The Taurus Defendants designed and manufactured the Revolvers with the defects. The Taurus Defendants designed, manufactured, marketed, distributed, and placed the Revolvers into the stream of commerce knowing and expecting that the Revolvers would be used by consumers and around the general public.   By distributing the Revolvers, the Taurus Defendants impliedly represented to Plaintiffs and Class Members that the Revolvers were merchantable, would operate effectively, were safe for normal use, suitable for the ordinary and usual purposes for which they were intended, and would not create an unreasonable risk of injury to consumers.

101.     The Taurus Defendants were on notice of the breach of implied warranties at the time the Revolvers were manufactured and distributed. The Taurus Defendants knew, or should have known about the defects.

102.     The Taurus Defendants failed to provide an adequate remedy and caused their implied warranties to fail of their essential purpose, thereby permitting remedy under the implied warranties to Plaintiffs and others similarly situated.

103.     As a direct and proximate result of the breach of said warranties, Plaintiffs and Class Members have suffered and will continue to suffer a loss as alleged herein in an amount to be determined at trial.

104.     Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against the Taurus Defendants for compensatory damages for himself and each

member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

## COUNT SIX
### (Magnuson-Moss Warranty Act)

105.　　Plaintiffs, individually, and on behalf of all others similarly situated, incorporate by reference paragraphs 1-56 and Counts Four and Five and all Exhibits attached hereto as though expressly stated herein in this paragraph.

106.　　The express and implied warranties as described in Counts Four and Five are subject to the provisions and regulations of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, *et seq.*

107.　　To the extent required by law, the Taurus Defendants have expressly waived any basis of the bargain requirement as to Plaintiffs and Class Members by extending the express and implied warranties described in Counts Four and Five to any owner of a Revolver and not restricting these warranties solely to the buyer of a Revolver.

108.　　Plaintiffs and Class Members are "consumers" as defined in the MMWA. Defendants are "suppliers" and "warrantors" as defined by the MMWA.

109.　　The Revolvers in question are "consumer products" as defined in the MMWA and the Revolvers were manufactured and sold after July 4, 1975. The express warranties provided by the Taurus Defendants and/or required by statute to be provided by the Taurus Defendants are a full "written warranty" as defined in the MMWA.

110.　　The Taurus Defendants breached the express and implied warranties as described in Counts Four and Five.

33

111.     The Taurus Defendants had sufficient notice because they were aware or should have been aware of the defects at the time of the manufacture and/or sale of the Revolvers.

112.     The Taurus Defendants' conduct described herein is a violation of the MMWA.

113.     By virtue of the foregoing, Plaintiffs and Class Members are entitled to an award of damages and other appropriate relief, including attorneys' fees and costs, as allowed by the MMWA. Further, the MMWA provisions allowing recovery of attorneys' fees, costs, and expenses, applies to any consumer who prevails on any warranty affected by the MMWA, whether express and/or implied warranties.

## COUNT SEVEN
### (Negligent Failure to Disclose, Failure to Warn, Concealment and Misrepresentation)

114.     Plaintiffs, individually, and on behalf of all others similarly situated, incorporate by reference paragraphs 1-56 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

115.     The Revolvers are an inherently dangerous commodity and the Taurus Defendants at all times relevant had a duty to disclose to and warn Plaintiffs and Class Members truthfully and accurately, and not to conceal or misrepresent such truth, about the Safety Defects, and a duty to provide a fair and adequate warning of the dangerous potentiality of the Revolvers due to the defects.

116.     By the Taurus Defendants designing, manufacturing, failing to test, marketing, distributing, and placing an inherently dangerous commodity such as the Revolvers in the channels of trade, then by the very nature of their commercial activity, the Taurus Defendants have a duty to provide a fair and adequate warning of the dangerous potentiality of the Revolvers due to the defects.

34

117.     The Taurus Defendants could foresee that the Revolvers, due to the latent defects, posed a clear, substantial and unreasonable risk of personal injury and death. The proper measure of duty for the Taurus Defendants in designing, manufacturing, testing, selling, marketing, and distributing an inherently dangerous commodity such as the Revolvers is the reasonable foreseeability that serious injury or death might result from the use of the commodity.

118.     Notwithstanding this duty, and in violation thereof, the Taurus Defendants carelessly and negligently failed to disclose to and warn Plaintiffs and Class Members, and concealed and misrepresented the truth, about the latent defects which posed a clear, substantial and unreasonable risk of personal injury and death.

119.     Because Plaintiffs and Class Members did not have an equal opportunity to discover such truth about the Taurus Defendants' defectively designed Revolvers, Plaintiffs and Class Members own and/or use the Revolvers in the reasonable, but, unbeknownst to them, false belief they were fit for use, merchantable, and reasonably safe for their intended purposes.

120.     Because the Revolvers were not in fact fit for use, merchantable, and reasonably safe for their intended purposes, and because of the Taurus Defendants' negligent failure to disclose and warn and their concealment and misrepresentation of such facts, as a direct and proximate result Plaintiffs and Class Members have been exposed to a clear, substantial and unreasonable risk of serious injury and death.

121.     Plaintiffs, on behalf of themselves, and the Class, demand judgment against Taurus for damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

## COUNT EIGHT
### (Fraudulent Concealment and Intentional Failure to Warn)

122.     Plaintiffs, individually, and on behalf of all others similarly situated, incorporate by reference paragraphs 1-56 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

123.     The Taurus Defendants fraudulently concealed and intentionally failed to warn Plaintiffs and Class Members of the defects with the intent to deceive Plaintiffs and Class Members into ownership and/or use Revolvers without knowledge of the defects which poses a clear, substantial and unreasonable risk of personal injury and death.

124.     The Taurus Defendants falsely and fraudulently represented to Plaintiffs and Class Members that their Revolvers were safe for normal use.

125.     Plaintiffs and Class Members reasonably and justifiably relied on the Taurus Defendants' false and fraudulent representations, and on the Taurus Defendants' deliberate silence, concerning the highly significant and material fact that the Revolvers were not safe for normal use, as a result of which, to their detriment, they elected to own and/or use Revolvers without knowledge of such fact.  There were no reasonable means for Plaintiffs or Class Members to make themselves aware of such fact, since the Taurus Defendants have retained tight control of the relevant information concerning the defects.

126.     As a direct and proximate result of the Taurus Defendants' fraudulent conduct, of both commission and omission, Plaintiffs and Class Members have been exposed to a clear, substantial and unreasonable risk of personal injury and death during their lawful possession and normal use of their Revolvers.

127.     Plaintiffs, on behalf of themselves, and the Class, demand judgment against the Taurus Defendants for compensatory and punitive damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

### COUNT NINE
### (Declaratory Relief)

128.     Plaintiffs, individually, and on behalf of all others similarly situated, incorporate by reference paragraphs 1-56 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

129.     The Taurus Defendants acted or refused to act on grounds that apply generally to the Plaintiffs and Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2). There is an actual controversy between Plaintiffs and the Taurus Defendants concerning the defects in the Revolvers. The defects have diminished the value of the Revolvers and create a definite threat of future injury to Plaintiffs and Class Members.

130.     Accordingly, Plaintiffs seek a declaration that: (1) all Revolvers with the defects have common design defects in workmanship and material that make the Revolvers prone to fire unexpectedly and against the intention of the handler; and (2) the Taurus Defendants knew of the defects in Revolvers and failed to disclose material facts about the defects.

131.     Further, Plaintiffs seek injunctive relief requiring the Taurus Defendants to issue a recall of all Revolvers with the defects.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for a judgment against the Taurus Defendants as follows:

(a)     Enter an Order certifying this action to proceed as a class action, and naming Plaintiffs as the representatives for the Class and their counsel as counsel for the Class;

(b)     Enter an award in favor of Plaintiffs and the Class that includes compensatory, exemplary or punitive damages, treble damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

(c)     Enter an award in favor of Plaintiffs and the Class for compensatory damages that includes the cost of repair, replacement or modification of the defects to render safe the Revolvers;

(d)     Declare that the Taurus Defendants are financially responsible for notifying all Class Members of the defects with the Revolvers;

(e)     Enter an Order enjoining the Taurus Defendants from further deceptive advertising, marketing, distribution, and sales practices with respect to the Revolvers and requiring the Taurus Defendants to repair and/or replace Plaintiffs' Revolver and Class Members' Revolvers with a suitable alternative Revolver of Plaintiffs' and Class Members' choosing.

(f)     Declare that the Taurus Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Revolvers, or order the Taurus Defendants to make full restitution to Plaintiffs and Class Members.

(g)     Enter an Order permanently enjoining the Taurus Defendants from continuing to engage in the unlawful and inequitable conduct alleged herein;

(h)     Granting Plaintiffs and the Class all equitable remedies permitted by law against the Taurus Defendants;

(i)     Enter an award of attorneys' fees and costs, as allowed by law;

(j)     Enter an award of pre-judgment and post-judgment interest, as provided by law;

(k)     Grant Plaintiffs and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

(l)     Grant such other relief against the Taurus Defendants as the Court may deem just and proper under the circumstances and applicable law.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Respectfully submitted, this 5th day of May, 2016.

*Counsel for Plaintiffs*:

s/  Andrew F. Knopf
ANDREW F. KNOPF, ESQUIRE
Florida Bar No.: 658871
KNOPF BIGGER
1560 N. Orange Avenue, Suite 220
Winter Park, Florida 32789
Phone: (407) 622-2111
Fax: (407) 622-2112
Primary Email: andrew@knopfbigger.com
Secondary Email: burton@knopfbigger.com
Additional Email: stephanie@knopfbigger.com

SAM DAVID KNIGHT
Florida Bar No.: 637319
**BADHAM & BUCK, LLC**
2001 Park Place North, Suite 500
Birmingham, Alabama 35203
Phone: (205) 521-0036
Fax: (205) 521-0037
Primary Email: sdknight@badhambuck.com
Secondary Email: kmiller@badhambuck.com
Additional Email: jhughes@badhambuck.com

39

W. PERCY BADHAM III
Alabama Bar No.: ASB-2147-D51W
*Pending admission pro hac vice*
BRANNON J. BUCK
Alabama Bar No.: ASB-5848-K56B
*Pending admission pro hac vice*
**BADHAM & BUCK, LLC**
2001 Park Place North, Suite 500
Birmingham, Alabama 35203
Phone: (205) 521-0036
Fax: (205) 521-0037
pbadham@badhambuck.com
bbuck@badhambuck.com


GREGORY A. BROCKWELL
Alabama Bar No.: ASB-9949-R49B
*Pending admission pro hac vice*
**LEITMAN, SIEGAL & PAYNE, P.C.**
420 20th Street North, Suite 2000
Birmingham, Alabama 35203
Phone: 205-251-5900
gbrockwell@lsppc.com


ALAN K. BELLENGER
Alabama Bar No.: ASB- 2884-L74B
*Pending admission pro hac vice*
VINCENT SWINEY
Alabama Bar No.: ASB-3672-J52S
*Pending admission pro hac vice*
**SWINEY & BELLENGER, LLC**
2910 Linden Ave., Suite 201
Homewood, Alabama 35209
Phone: (205) 588-4652
Fax: (205) 224-5683
akb@sblaw.net
jvs@sblaw.net