UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-21606-Civ-TORRES

WILLIAM BURROW and OMA LOUISE
BURROW,

    Plaintiffs,

v.

FORJAS TAURUS S.A. and BRAZTECH
INTERNATIONAL, L.C.,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL RESPONSES

This matter is before the Court on Plaintiffs' Motion to Compel Responses to Plaintiff's' First Request for Production to Forjas Taurus S.A. [D.E. 31], to which Defendant Taurus responded in opposition [D.E. 36] and Plaintiffs replied [D.E. 37].[1] The issues raised in the motion are ripe for adjudication. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Plaintiff's Motion to Compel is **GRANTED.**

### *I.   BACKGROUND*

On October 26, 2012, William and Oma Louise Burrow ("Plaintiffs") purchased a Rossi model R35102 revolver, S/N EX43410 from Academy Sports + Outdoors for $259.99. [D.E. 1 at ¶ 43]. Plaintiffs are said to have purchased the

---

[1] On December 6, 2017, the parties consented to jurisdiction by the United States Magistrate Judge. Accordingly, this Motion is referred to the undersigned Magistrate Judge for disposition. [D.E. 25].

1

revolver for protection against coyotes present on their farm. *Id.* In February 2014, after a day of working on their farm, Plaintiffs returned to their primary residence. *Id.* at ¶ 45. It was as Plaintiffs were removing items from their vehicle that Mrs. Burrow accidentally dropped the revolver. *Id.* The revolver fired upon hitting the ground and a bullet struck Mrs. Burrow in the knee. *Id.* Plaintiffs maintain that the safety was on and the revolver was properly holstered when dropped. *Id.*

On May 5, 2016, Plaintiffs filed a class action suit against Defendants Forjas Taurus S.A. and Braztech International, L.C. alleging both companies knowingly and negligently designed, manufactured, distributed, and sold a class of revolvers with safety mechanisms that were defective.[2] *Id.* at ¶ 1. Forjas Taurus S.A.is the manufacturer of the revolvers and is based in Brazil while Braztech International, L.C. is the distributor and seller of the revolvers and is based in Florida. *Id.* It is argued that all of the revolvers contain at least one defect in the alignment of the hammer's rebound slide seat and that some the revolvers also contain another defect in a separate hammer block component. *Id.* at ¶ 28. These safety mechanisms are designed to prevent "drop-fire" incidents like the one Plaintiffs alleged happen. *Id.*

Defendant Braztech International, L.C. answered the Complaint on June 27, 2016 [D.E. 9] and Defendant Forjas Taurus S.A. answered the Complaint on January 6, 2017 [D.E. 27]. At the commencement of discovery, Plaintiffs sent their

---

[2] The class of revolvers includes Rossi branded Models R35102, R35202, R85104, R97206, R97104, R46202, R46102, for use with .38 Special cartridges. [D.E. at ¶ 27].

2

first request for production to Defendant Forjas Taurus S.A. ("Defendant") on January 24, 2017. Defendant timely responded on February 23, 2017. [D.E. 31 at 2]. In response to each of the Plaintiffs' thirty-four requests to production, Defendant stated:

> Forjas Taurus objects to Request for Production No. [ ] because it seeks documents located in the Federative Republic of Brazil and there is currently no treaty in place between the United States and Brazil that authorizes and regulates the taking of evidence abroad. Rather, the taking of evidence located in Brazil for use in litigation pending in EXHIBIT "B" Case 1:16-cv-21606-EGT Document 31-2 Entered on FLSD Docket 04/11/2017 Page 1 of 32 2 U.S. courts is informed by Article 5(j) of the Vienna Convention on Consular Relations, 21 U.S.T. 77, which holds that any such evidence taking must comply with the laws of Brazil. According to the U.S. Department of State's Bureau of Consular Affairs, Brazilian law requires that evidence collection in a civil matter such as this case "be taken before a Brazilian court pursuant to letters rogatory." Because the laws of Brazil do not recognize the authority of foreign persons, such as U.S. attorneys, to take evidence in any form other than letters rogatory, Forjas Taurus further objects that Request No. [ ] violates Brazilian sovereignty, international comity, Brazil's judicial sovereignty, and Brazilian procedural law. The application of the Vienna Convention puts the parties in a situation where the Plaintiffs' requests were effectively "not served" on the Forjas Taurus. Forjas Taurus, in an abundance of caution, files and serves these Vienna Convention based objections now, and reserves the right to file additional objections, if necessary.

[D.E. 31 at 2].

Plaintiffs conferred with Defendant after receiving the response and Defendant maintained its objection while also declining to supplement any additional objections pursuant to the Federal Rules when Plaintiffs gave the opportunity to do so. [D.E. at 3]. As such, Plaintiffs filed this Motion.

3

## II. ANALYSIS

### A. *Standard of Review*

Federal Rules of Civil Procedure ("The Federal Rules") defines the scope of discovery as including "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b). "The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Courts must consequently employ a liberal and broad scope of discovery in keeping with the spirit and purpose of these discovery rules. *Rosenbaum v. Becker & Poliakoff, P.A.*, 708 F. Supp. 2d 1304, 1306 (S.D. Fla. 2010) (collecting cases).

To sustain a discovery objection, the party opposing production must show that the requested discovery has no possible bearing on the claims and defenses raised in the case. *See, e.g., Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008). This means that the party must demonstrate either that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosures. *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007). And to show that the requested discovery is otherwise objectionable, the onus is on that party to demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome. *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1354 (S.D. Fla. 2000) (citing in part

*Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (objections must be "plain and specific enough so that the court can understand in what way the [requested discovery] are alleged to be objectionable").

### B. *Timeliness of Plaintiff's Motion*

Local Rule 26.1(g)(1) provides in material part that "[a]ll motions related to discovery, including but not limited to motions to compel discovery ... shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought." The Court finds that this Motion was timely filed.

### C. *Production will be Compelled*

When analyzing disputes that arise from conflicting international law on the rules of discovery, the United States Supreme Court's decision in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522 (1987) primarily governs. The case involved plaintiffs in a personal injury action against defendants, the manufacturers of a crashed airplane made in France. *Id.* at 522. Plaintiffs served a discovery request under the Federal Rules, to which defendants filed a motion for a protective order, "alleging that the [Hague] Convention dictated the exclusive procedures that must be followed since [defendants] are French and the discovery sought could only be had in France." *Id.* at 522. The district court denied defendant's motion, and the Court of Appeals denied petitioners' mandamus petition. Defendants then appealed to the Supreme

Court. The Court recognized that while both the discovery rules in The Hague Convention and Federal Rules of Civil Procedure are the law of the United States, it is necessary to "analyze the interaction between [the] two bodies of law." *Id.* The Court held that the Convention's plain language did not explicitly impart mandatory or exclusive procedures for discovery. *Id.* As such, the Convention did not divest the district court of its jurisdiction to order, under the Federal Rules, a foreign national party to produce evidence physically located within a signatory nation. *Id.*

Although the *Aerospatiale* Court was evaluating The Hague Convention, its reasoning has been applied in other cases dealing with different international laws on the rules of discovery. *U.S. v. Billie*, 611 F. App'x 608, 610 (11th Cir. 2015) (citing *Aerospatiale* when analyzing the district court's authority to order a party under its jurisdiction to produce documents, though the party alleges that the order would violate Native American tribal law); *Consejo de Defensa Del Estado de la Republica de Chile v. Espirito Santo Bank*, No. 09-20613-CIV, 2010 WL 2162868 (S.D. Fla. May 26, 2010) (citing *Aerospatiale* when analyzing privileges under Chilean law for discovery procedures and applying five-factor test found in the Supreme Court's decision). It is therefore necessary to apply the *Aerospatiale* Court's analysis to the Vienna Convention on Consular Relations on which the Defendant relies as the basis for its refusal to answer production requests.

*1.    Jurisdiction and First Resort of Letters Rogatory*

Plaintiffs urge this Court to compel Defendant to answer requests for production pursuant to the Federal Rules rather than allowing for the process of issuing letters rogatory. [D.E. 31 at 4]. "[I]nternational comity does not require in all instances that American litigants first resort to [international] procedures before initiating discovery under the Federal Rules." *Aerospatiale*, 482 U.S. at 523. The issue presented here is whether the issuance of letters rogatory is mandatory and appropriate as a first resort in this case.

Plaintiffs contend that it is not. The source for that argument lies in *Aerospatiale's* reliance on international law not being read "as the exclusive means for obtaining evidence located abroad" when there is no explicit language requiring it. *Id.* at 539. Plaintiffs rely on thirty years of precedent to show state and federal court's unwillingness to substitute the Federal Rules for international procedures for discovery. [D.E. at 6]. Plaintiffs also note that Defendant is under the personal jurisdiction of this court and has not challenged the jurisdiction. As such, Plaintiffs contend, this Court has the authority to order Defendant to comply with the Federal Rules and disclose the information requested. [D.E. 37 at 1].

Defendant concedes that this Court has personal jurisdiction over it, and yet maintains that, in the interest of Brazilian sovereignty, the discovery phase should be conducted through the issuance of letters rogatory as a first resort. [D.E. 36 at 3]. Defendant seeks denial of Plaintiffs' motion on the basis of international comity, citing *Hilton v. Guyot* as support, to conclude that this Court should recognize and

respect Brazil's judicial acts in this case. *Id*. at 4. *See Hilton v. Guyot*, 159 U.S. 113 (1895). Defendant points to the core value of comity as the recognition of foreign law so as to foster international cooperation. [D.E. 36 at 4 (citing *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984) (upholding the district court's decision to grant plaintiff's motion for preliminary injunction restraining defendants from taking part in a foreign action designed to prevent the district court from hearing the antitrust claims)]. With Brazil being a civil law jurisdiction, discovery is carried out by, and is the responsibility of, the courts, rather than the advocates of the parties. It is for this reason that Defendant argues discovery should be conducted by a Brazilian judge pursuant to letters rogatory so as not to commit a constitutional offense in Brazil. [D.E. at 9].

Significantly, however, Defendant offers no source of authority in which a court, state or federal, completely superseded the Federal Rules in favor of letters rogatory in the interest of international comity, which is the course of action Defendant is seeking. To begin with, the court in *Hilton* dealt with the issue of respecting international judgments, not discovery procedures. Even so, while recognizing the importance of international judgments, the court still held that a judgment made in France is non-conclusive in the United States. *Hilton*, 159 U.S at 227. Furthermore, in *Laker*, another case cited in Defendant's response, the court noted "that national laws do not evaporate when counteracted by the legislation of another sovereign." 731 F.2d at 953. That undeniable proposition is a far cry from what Defendant is seeking here.

8

At best, Defendant has only been able to cite two cases in which courts narrowly applied an aspect of international law to address the scope of discovery, in conjunction with the Federal Rules. *See Madanes v. Madanes*, 186 F.R.D. 279 (S.D.N.Y. 1999) (applying Argentinian privilege laws concurrently with the Federal Rules); *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, No. 12-CV-08087 CM SN, 2013 WL 2661037, at *18 (S.D.N.Y. June 12, 2013) (allowing procurement of evidence under Singapore's bank secrecy laws after most of the discovery process was completed under the Federal Rules). But a review of these cases shows that the Federal Rules were never superseded by foreign procedures as Defendant would have us do here. To the contrary, these cases only illustrate that the Federal rules always take precedence even though foreign jurisdictions' interests may always be taken into account.

Defendant has also not directed us to any provisions of the Vienna Convention that explicitly mandate the use of letters rogatory as a first resort. As stated earlier, the *Aerospatiale* Court found that, because the Hague Convention did not enforce exclusive procedures for discovery, the district court retained its discretion to order discovery through the use of the Federal Rules. *Id*. at 522. Defendant here cites Article five of the Vienna Convention, which details respective signatories' consular functions. [D.E. 36 at 5]. One of those functions includes:

> transmitting judicial and extrajudicial documents or executing letters rogatory or commissions to take evidence for the courts of the sending State in accordance with international agreements in force or, in the absence of such international agreements, in any other manner compatible with the laws and regulations of the receiving State;

9

Vienna Convention on Consular Relations art. 5, April 24, 1963, 21.1 U.S.T. 77, 596 U.N.T.S. 261. While this provision does cite the use of letters rogatory as an option, it does not, nor does any other provision, enforce the use of letters rogatory primarily over national law.

Finally, Defendant's concession to personal jurisdiction further supports granting Plaintiffs' Motion. This district has adressed this very issue and recognized that there was no "rule of first resort" when seeking discovery from a foreign party over whom the federal court has *in personam* jurisdiction. *In re Chiquita Brands International, Inc.*, 2015 WL 12601043, at *8 (S.D. Fla. April 7, 2015) (holding that applying Hague convention discovery procedures was appropriate only because the non-party witnesses were outside the court's jurisdiction).

### 2. *Five-Factor Balancing Test*

Though there is no case law or text within the Vienna Convention supporting the decision to use international law in lieu of the Federal Rules during the discovery process, *Aerospatiale* still recognized the challenges potentially faced by foreign parties. 482 U.S. at 523. Consequently, the Court held that the "concept of comity requires" an analysis of the respective interests of the foreign and requesting nations. *Id.* It is the responsibility of the trial court to base its analysis on the following five factors:

> (1) The importance to the ... litigation of the documents or other information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means of securing the information; and

> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at 544 n. 27-28. We find that an objective analysis of these factors to be in favor of Plaintiffs' position overall.

(a) Importance of the information requested in relation to the litigation.

Plaintiffs contend that absolutely no evidence regarding the subject matter of the requested information, including the design and manufacturing of the revolver, is accessible to them. [D.E. 31 at 9]. In fact, Defendant does not refute the claim by Plaintiffs that all of the necessary and relevant information sought is in the sole possession of Defendant. Citing *Consejo,* Plaintiffs argue that they would be severely disadvantaged without the information requested. *Id.*

This Court noted that "depriving [Plaintiffs] of the information sought, while the foreign sovereign had full access to the requested information, would not only place the parties on unequal footing, but would also impede a full and fair adjudication of the matter because of the lack of complete discovery." *Consejo,* 2010 WL 2162868, at *2 (holding that the foreign party had the obligation to provide relevant information that could be used by other party to defend itself).

Defendant responds that Plaintiffs failed to explain how the outcome of this case rests on the information requested. [D.E. 36 at 6]. Defendant cites *Richmark Corp. v. Timber Falling Consultants* to show that courts have been unwilling to ignore foreign laws where the outcome of a case does not rest or fall with the information requested. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d

1468, 1475 (9th Cir. 1992) (noting Chinese secrecy law does not excuse the Chinese defendant from complying with the district court's order to compel discovery). But, *Richmark* was a case in which a Chinese secrecy law was the foreign law being litigated and the Chinese defendant requested for that law to be applied in conjunction with the Federal Rules. *Id.* Once again, Defendant here is going much further by seeking to use letters rogatory as a first resort, not as a complimentary procedure as requested in *Richmark*. And even the limited request by the defendant in *Richmark* was denied by the court due to the relevance of the information sought. *Id.*

In light of all the requested information being in the possession of Defendant, this Court finds it significant that Plaintiffs should have access to this information in order to adequately build a case. The design, manufacturing, and distribution of the revolvers alleged to be defective are all information highly relevant to this products liability case. It is difficult to see how such information would not affect the outcome of this case as Defendant suggests. This first factor weighs in favor of Plaintiffs.

(b) The degree of specificity of the request.

*Aerospatiale* recognizes that some requests are more burdensome and intrusive than others. Thus, the trial court must draw a line between reasonable and unreasonable requests. 482 U.S. at 546. It is thus important to consider the potential strain associated with the Defendant responding to Plaintiffs' request for production.

Defendant argues that Plaintiffs' requests "are overbroad, vague, and ambiguous", making the gathering of evidence arduous. [D.E. 36 at 7]. Defendant asserts that the phrase "any and all documents that reference or relate to . . ." used by Plaintiffs is too broad, relying on *Great Lakes Transp. Holding, LLC v. Yellow Cab Serv. Corp. of Fla.,* Inc., No. 10-80241-CIV, 2010 WL 5093746, at *6 (S.D. Fla. Dec. 8, 2010) (holding that plaintiff's requests involving the phrase "related to" and "concerning" are too broad and must be narrowed). Defendant claims that the use of letters rogatory will compel Plaintiffs to better tailor their requests. [D.E. 36 at 7].

After reviewing Plaintiffs' requests for production, we find the requests to be customary in a products liability case. [D.E. 31 Ex. A]. Unlike *Great Lakes*, which involved a trademark infringement claim, this case involves a defect in a foreign product. It is standard in these kinds of cases for requests to include the phrases "any and all documents relating to" when the subject matter is on design, manufacturing, safety manuals, etc.  Additionally, *Aerospatiale* noted that, assuming a court might be convinced that a production request is too broad or intrusive, a court may still refuse to resort to the use of international procedures for discovery and instead order more tailored requests. 482 U.S. at 545.  This second factor weighs in favor of Plaintiffs.

(c) Location of information requested.

As Plaintiffs admit, all of the information requested resides in Brazil. Defendant uses this fact to argue against disclosure as the information, the people who will be deposed, and those who will produce the documents will all be subject to

Brazil's discovery laws. [D.E. 36 at 7]. *See C.E. Int'l Res. Holdings, LLC v. S.A. Minerals LTD.*, No. 12-CV-08087, 2013 WL 2661037 at *10 (S.D.N.Y. June 12, 2013) (holding that plaintiff's motion to compel enforcement of a subpoena *duces tecum* be denied because, under the principles of international comity, alternative avenues existed to obtain the information requested that did not offend Singaporean law). This factor does weigh in favor of Defendant.

(d) Alternative means of securing the information.

Defendant refers to the *Madanes* court's statement that, if the information requested can be easily obtained elsewhere or by other means, there is little reason to require a party to trample on foreign law. 186 F.R.D. at 287. As such, Defendant concludes that the letters rogatory process is the least intrusive alternative that will not offend Brazil's nature of being a civil law jurisdiction. [D.E. 36 at 8].

Plaintiffs, however, argue that the use of letters rogatory is not a viable or efficient alternative means of obtaining the evidence sought from defendant and cite *Richmark*, 959 F.2d at 1457, to explain that an alternative means to the Federal Rules must be substantially equivalent. [D.E. at 2].

The Letter of Request procedure under the Hague Convention, tantamount to the letters rogatory process, was seen as "unduly time consuming and expensive, as well less certain to produce needed evidence than direct use of the Federal Rules", contributing to *Aerospatiale's* decision to uphold the districts court's refusal to apply Convention procedures in that case. 482 U.S. at 542; *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255 (11th Cir. 2015) (describing the letters rogatory

process as "complicated, dilatory, and expensive" and affirming district court's refusal to issue letters rogatory). Defendant does not proffer any case law deeming the issuance of letters rogatory as substantially equivalent to the Federal Rules. So with the decision on whether to issue letters rotatory lying within the discretion of district court, and case law universally describing this process as inefficient, this fourth factor favors Plaintiffs. *Aerospatiale*, 482 U.S. 542; *Yellow Pages*, 795 F. 3d at 1273.

(e) Balance of national interests.

Defendant has not explained in what way Brazilian sovereignty or interest is at risk other than the Federal Rules being in conflict with Brazil being a civil law jurisdiction that carries out the discovery process through judicial officers. *Aerospatiale* rejected this very argument and found it unpersuasive when petitioners in that case asserted that American courts had a duty to adhere to Convention procedures when dealing with civil law nations. 482 U.S. at 543. As Plaintiffs note, Defendant has not offered any affidavits from the Brazilian government or corroboration that Brazil has taken an interest in this case in which it wishes to protect.

The United States, on the other hand, has always had an interest in adjudicating products liability cases involving foreign parties so as to protect its citizens from injury in the United States. *See, e.g., Vermeulen v. Renault, U.S.A., Inc.*, 985 F. 2d 1534, 1551 (11th Cir. 1993) (noting that the United States' interest in cases involving injured citizens plays a factor in finding personal jurisdiction and

then holding that personal jurisdiction exists). Plaintiffs in this case are alleging a defect in a class of revolvers and cite this defect as the cause of an injury suffered by one of the Plaintiffs. The theoretical possibility that this case could be class certified further increases the United States' interest. As such, this final factor weighs in favor of Plaintiffs.

In sum, Defendant was unable to show any material precedent substituting the Federal Rules with international law to conduct discovery, and failed to show how the protection of Brazil's sovereignty outweighed the interests of the United States to litigate this case under the Federal Rules. Thus, Plaintiff's Motion to compel responses from Defendant is granted. We need not require the issuance of letters rogatory for the discovery process.

### D. *Further Objections will not be Waived*

Rule 34 (b)(2)(A) of the Federal Rules dictates that the responding party must serve its answers and any objections to requests for production within thirty days. Plaintiffs request that Defendant's ability to make additional objections be waived. After being given the opportunity to amend its responses to Plaintiff's request for production, Defendant decided against supplementing objections pursuant to the Federal Rules. [D.E. 31 at 3]. Defendant was even warned by Plaintiffs that they would request a waiver of any belated objections. *Id.*

We recognize that any further objections made by Defendant would be considered untimely. Nonetheless, though Plaintiffs' requests for production are standard, the requests are broad enough that an order deeming all future objections

16

waived would too severely prejudice Defendant. Thus, Defendant is allowed the opportunity to amend its answers and raise further objections pursuant to the Federal Rules. However, Defendant must promptly produce any and all documents to any request not subject to objection.

### III.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Compel [D.E. 31] is **GRANTED.** Defendant is ordered to produce to Plaintiffs any responsive documents to the applicable discovery requests within fourteen (14) days of the entry of this Order. Any additional objections must be made in a supplemental response also due within twenty-one (21) days of the entry of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of June, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge