# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 16-Civ-21606-TORRES

WILLIAM BURROW and OMA LOUISE
BURROW,

       Plaintiffs,

v.

FORJAS TAURUS S.A. and
BRAZTECH INTERNATIONAL, L.C.,

       Defendants.

_____/

## ORDER ON BRAZTECH'S MOTION TO CONSOLIDATE

This matter is before the Court on Braztech International L.C.'s ("Defendant" or "Braztech") motion to consolidate this action with *William Burrow and Oma Louise Burrow v. Forjas Taurus and Braztech*, case no. 1:16-cv-21606-EGT (the "*Burrow* case"). On November 6, 2017, Suzanne M. Bedwell ("Ms. Bedwell") and Ernest D. Bedwell ("Mr. Bedwell") (the "Bedwell Plaintiffs") filed their response [D.E. 73] to which Braztech replied on November 13, 2017. [D.E. 76]. Therefore, Braztech's motion is now ripe for disposition. After careful consideration of the motion, response, reply, the benefit of oral argument, the record presented, the relevant authority, and for the reasons discussed below, Braztech's motion is **GRANTED in part** and **DENIED in part**.[2]

---

[2] On November 8, 2017, William Burrow and Oma Louise Burrow (the "Burrow Plaintiffs") filed a motion to intervene to oppose Braztech's motion to consolidate. [D.E. 75].

# I.  BACKGROUND

## A.      *The Bedwell Case*

The Bedwell Plaintiffs filed this action (the "*Bedwell* case") on September 16, 2016 (four months after the *Burrow* case) in the United States District Court for the District of Alaska as a proposed class action alleging negligent design or manufacture of Rossi-brand .357 Magnum revolvers.  [D.E. 1].[3]  On January 20, 2015, Ms. Bedwell purchased a Magnum revolver at an outdoor equipment retailer in Wasilla, Alaska.  On February 21, 2015, Ms. Bedwell, along with her husband and son, drove to an ammunition store to purchase supplies before driving to Palmer, Alaska to engage in target practice.  In the process of exiting the motor vehicle in the parking lot, the revolver inadvertently fell out of its holster, landed on its hammer, and unintentionally discharged a round of ammunition that struck Ms. Bedwell's son in his left leg.  Ms. Bedwell suggests that the accidental discharge of the firearm was directly and proximately caused by the firearm's defective condition, including manufacturing and/or design defects.  As a result of the injury to Ms. Bedwell's son, Alaska state troopers were called to the scene.  After hearing Ms. Bedwell's explanation for the cause of the accident, the officers took the firearm into their possession.

On April 14, 2015, Alaska state troopers tested Ms. Bedwell's firearm for a potential misfiring defect by tapping the revolver on the hammer with a small

___

[3]      Mr. Bedwell originally filed a related action in Alaska state court – on behalf of his minor child – seeking damages for personal injury and emotional distress. The state and federal case were eventually combined into one action in District Court of Alaska before being transferred to the Southern District of Florida.

mallet. The test allegedly resulted in an unintentional misfiring of the weapon. Plaintiff then purchased three additional Rossi .357 revolvers and a local gunsmith tested them for defects. Out of the three, one discharged in the same way as Ms. Bedwell's revolver when struck on the hammer with a mallet. As such, Ms. Bedwell filed this class action seeking to force Braztech to recall, repair, and/or repurchase the defective .357 revolvers sold to Ms. Bedwell and the class. Specifically, the Bedwell Plaintiffs seek to represent a proposed class that includes "[a]ll individuals in the United States and its territories who own a Rossi .357 Magnum revolver." [D.E. 75-1]. The Magnum revolvers include models R46202, R46102, R97206, and R97104.

In sum, the Bedwell Plaintiffs allege that Braztech violated the Florida Deceptive and Unfair Trade Practices Act, committed two counts of negligence (failure to warn and failure to test), and breached several warranties. Judge Sedgwick, in the District of Alaska, transferred this case to the Southern District of Florida pursuant to the first-filed rule because there was substantial overlap between *Bedwell* and *Burrow*.

**B.    *The Burrow Case***

 William Burrow and Oma Louise Burrow (the "Burrow Plaintiffs") filed their complaint on May 5, 2016 with allegations that certain handguns that Forjas Taurus manufactured – and that Braztech distributed in the United States – are defective and unreasonably dangerous. Specifically, the Burrow Plaintiffs claim that several handguns share safety features with identical designs and that they

are prone to drop-fires. The Burrow Plaintiffs own a Rossi .38 Special which allegedly discharges when dropped. As such, the Burrow Plaintiffs seek to represent a proposed class that includes "[a]ll individuals in the United States who own a Revolver." [D.E. 75-1]. The revolvers are defined as models R35102, R35202, R85104, R97206, R97104, R46202, and R46102.

The Court issued its Scheduling Order in the *Burrow* case on June 28, 2016. That Order initially established a trial date of March 5, 2018 with a discovery deadline of October 4, 2017 and a deadline for motions for October 9, 2017. These deadlines were subsequently extended and a new trial date is set for July 16, 2018. The discovery deadline is now February 2, 2018 and the deadline to file motions is April 13, 2018.[4] To date, the Burrow Plaintiffs have issued discovery requests to both Braztech and Forjas Taurus, and both defendants have produced documents in response.[5] On November 8, 2017, the Burrow Plaintiffs filed a motion to intervene to Braztech's motion to consolidate. [D.E. 75-1].

## II. ANALYSIS

Braztech's motion seeks to consolidate *Bedwell* with *Burrow* pursuant to Fed. R. Civ. P. 42(a), which provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters

---

[4] The Burrow Plaintiffs allege nine causes of action against Braztech and Forjas Taurus, including violations of the Florida Deceptive and Unfair Trade Practices Act, negligence, strict liability, breach of express warranty, breach of implied warranty, negligent failure to disclose, negligent failure to warn, concealment and misrepresentation, fraudulent concealment and intentional failure to warn, and declaratory relief. [D.E. 75-1].

[5] The Burrow Plaintiffs have purportedly spent tens of thousands of dollars having the Portuguese documents translated.

at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Rule 42(a) codifies a trial court's managerial power "'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1012 (5th Cir. 1977) (quoting *Landis v. North American Co.,* 299 U.S. 248, 254 (1936)). The Eleventh Circuit has "encouraged trial judges to 'make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion.'" *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985) (quoting *Dupont v. Southern Pacific Co.,* 366 F.2d 193, 195 (5th Cir. 1966)). The decision on whether to consolidate under Rule 42(a) is purely discretionary, yet the district court must determine the following:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Hendrix*, 776 F.2d at 1495 (quoting *Arnold v. Eastern Air Lines, Inc.,* 681 F.2d 186, 193 (4th Cir. 1982)). "The court must also bear in mind the extent to which the risks of prejudice and confusion that might attend a consolidated trial can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs' claims (including the defenses thereto) are submitted to the jury for deliberation." *Hendrix*, 776 F.2d at 1495.

## A. *The Burrow Plaintiffs' Motion to Intervene*

Before ruling on Braztech's motion to consolidate, we must consider the Burrow Plaintiffs' motion to intervene.[6]  Under Rule 24(a)(2), a district court *must* permit anyone to intervene in a case as a matter of right when the intervener:

> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).  "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action."  *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.,* 983 F.2d 211, 216 (11th Cir. 1993).

The Burrow Plaintiffs claim that they meet all four requirements under Rule 24(a)(2).  This means they must establish that (1) their motion is timely, (2) they have an interest relating to the property or transaction underlying *Bedwell*, (3) they are situated in a way that the disposition of *Bedwell* may impede or impair their ability to protect their interests, and (4) the original parties are inadequate to protect their interests.  *See Sierra Club, Inc. v. Leavitt,* 488 F.3d 904, 910 (11th Cir. 2007); *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (internal citation omitted).

Beginning with the question of timeliness, courts consider several factors to guide their analysis:

---

[6]     Braztech does not oppose the Burrow Plaintiffs' motion to intervene.

> 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene[;] 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case[;] 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied[;] and 4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017) (quoting *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1478-79 (11th Cir. 1993)). The Burrow Plaintiffs' motion is timely because it was filed approximately two weeks after Braztech filed its motion to consolidate on October 22, 2015. [D.E. 69]. When the Burrow Plaintiffs filed their motion on November 8, 2017 [D.E. 75], they did so before the hearing date scheduled on November 14, 2017. Therefore, the Burrow Plaintiffs have met the first factor under Rule 24(a)(2).

The second factor to consider under Rule 24(a)(2) is whether the Burrow Plaintiffs have an interest relating to the property or transaction in *Bedwell*. This factor is met because the two cases arguably include the same proposed class members and therefore are potentially "competing class actions, neither of which have been certified." *Dickstein v. Able Telcom Holding Corp.*, 192 F.R.D. 331, 334 (N.D. Ga. 2000). "This is sufficient to show an interest relating to the property or transaction which is the subject of the action," because the two cases concern similar (1) handguns, (2) causes of action, (3) parties, and (4) allegations of design/manufacturing defects. Therefore, the second factor favors intervention.

As for the third factor under Rule 24(a)(2) – which relates to whether the disposition of the *Bedwell* case could impede or impair the ability of the Burrow Plaintiffs' ability to protect their interests – we find that this factor also favors intervention. The Burrow Plaintiffs' interests could be impaired without intervention because a resolution in *Bedwell* could bind a proposed class in *Burrow* and negatively impact other proposed class members. *Id.*; *see also Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 696 (11th Cir. 2017) *(*finding that the interveners "have an interest in this case because, as class members, they will be bound by the terms of the settlement if it is approved and judgment is entered") (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1312 (11th Cir. 2012)). Therefore, the third factor favors intervention.

To satisfy the fourth factor, the Burrow Plaintiffs must rebut a presumption of adequate representation. The Burrow Plaintiffs and the Bedwell Plaintiffs are both pursuing a similar objective in vindicating their rights for the defective design of handguns "so we can presume that the [Bedwell Plaintiffs'] representation is adequate." *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999). "But the presumption is weak; in effect, it merely imposes upon the proposed interven[o]rs the burden of coming forward with *some evidence* to the contrary." *Id.* (emphasis added). "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Id.* The "general rule [is] that adequate representation exists if no collusion is shown between the representative and an

opposing party, if the representative does not have or represent an interest adverse to the proposed interven[o]r, and if the representative does not fail in fulfillment of his duty." *Id.* And "[s]howing any of these factors is not a difficult." *Id.*

Here, the Burrow Plaintiffs have met their "minimal" burden of showing inadequate representation because the Bedwell Plaintiffs included individual claims for personal injury in their case against Braztech. *See Tech. Training Assocs., Inc.*, 874 F.3d at 697. These individual claims may result in divergent interests when juxtaposed with the Burrow Plaintiffs and could make the Bedwell Plaintiffs more prone to compromise in a way that benefits Ms. Bedwell's son over those of the Burrow Plaintiffs and other class members. This is enough to rebut the presumption of adequate representation. *See id.* ("The plaintiffs have a greater incentive to settle because their claims may be barred by the statute of limitations if they cannot secure a waiver from Buccaneers, while the movants have no statute of limitations issue. Although the parties fiercely contest whether the plaintiffs' claims are actually time barred, the *risk* that they could be gives the plaintiffs a greater incentive to settle as compared to the movants.") (emphasis added); *Clark*, 168 F.3d at 462 ("A greater willingness to compromise can impede a party from adequately representing the interests of a nonparty."). Because we find that the Burrow Plaintiffs have satisfied all of the requirements under Rule 24(a)(2), we will consider their arguments – as well as the arguments of the Bedwell Plaintiffs – in opposition to Braztech's motion to consolidate.

### B.   *Braztech's Motion to Consolidate*

Braztech argues that there is substantial overlap between *Bedwell* and *Burrow* and that consolidating the two actions should be in the interest of all parties. First, Braztech contends that both cases involve the same models of Rossi-branded .357 branded Magnum revolvers. For example, the proposed class in *Bedwell* allegedly identifies four of the six models already identified in *Burrow*. Second, Braztech suggests that both cases involve common questions of law and fact such as the allegations that the revolvers contain a defective hammer-block mechanism. Braztech further notes that all members of the proposed class in this case would be included in the proposed class in *Burrow*. Third, Braztech argues that the two cases present the same issues as to whether the revolvers discharge when dropped as a result of a manufacturing or design defect.

Braztech further believes that consolidation will save significant time and resources, promote judicial economy, and prevent needless repetition of evidence, procedures, and trial issues. Braztech also argues that no party can point to any specific risk of prejudice or confusion that would arise from consolidation. Because both cases involve similar issues, similar discovery, an analysis of the same data, and resolution of the same factual issues, Braztech contends that consolidation is more than appropriate in this case.

In sum, Braztech concludes that almost every question of law or fact alleged in the two cases is the same, such as (1) whether Braztech breached any applicable warranties, (2) whether the revolvers misfire when dropped, (3) whether the

revolvers contain a manufacturing or design defect common to all revolver models, (4) whether Braztech knew the revolvers were defective, (5) whether Braztech violated the Florida Deceptive and Unfair Trade Practices Act, and (6) whether the named plaintiffs and putative class members are entitled to damages.

### 1.  *The Bedwell Plaintiffs' Initial Opposition*

The Bedwell Plaintiffs initially opposed Braztech's motion because consolidation would be inappropriate when there are numerous issues of both fact and law that are uncommon between the two cases.  The Bedwell Plaintiffs also claimed that Braztech failed to meet its burden to demonstrate that consolidation was appropriate and that it would be disingenuous and prejudicial if consolidation were ordered.  Because consolidation would result in prejudice to both sets of plaintiffs and hinder judicial economy, the Bedwell Plaintiffs concluded that Braztech's motion should be denied.

### 2.  *The Burrow Plaintiffs' Initial Opposition*

Apart from the Bedwell Plaintiffs, the Burrow Plaintiffs also initially opposed Braztech's motion to consolidate because the first-to-file rule allegedly *requires* that the *Bedwell* action be dismissed without prejudice because the *Burrow* case can provide full and adequate relief to all of the members of any proposed class.  *See, e.g.*, *VISX, Inc. v. Garabet*, 2000 WL 1929328, at *3 (N.D. Cal. Dec. 18, 2000) ("[T]he Court shall exercise its discretion under the first to file rule and [grant] the defendants' motion to dismiss the present complaint without prejudice.").  "Where two actions involving overlapping issues and parties are pending in two federal

courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citing *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 488 (8th Cir. 1990) (describing the first-filed rule as "well-established"); *Church of Scientology of Cal. v. United States Dep't of Defense,* 611 F.2d 738, 750 (9th Cir. 1979) (noting that the first-filed rule "should not be disregarded lightly")). The reason for the first-filed rule is that "no purpose would be served by proceeding with a second action." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

The first to file rule "determines which court may decide the merits of substantially similar issues," and "also establishes which court may decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated." *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). Once a court determines that a likelihood of substantial overlap exists between two cases, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 606 (5th Cir. 1999).

The Burrow Plaintiffs believed that there is no need to proceed with two cases when one is already subsumed by the other. *See Fisher v. Duff*, 2016 WL 3280429, at *3 (W.D. Wash. June 15, 2016) ("[T]he Court finds that dismissal is more appropriate because the putative class members in this suit can obtain relief

in the Court of Federal Claims suit.") (citing *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 963 (N.D. Cal. 2008) ("Dismissal is proper where the court of first filing provides adequate remedies.")). Alternatively, the Burrow Plaintiffs suggestws that the *Bedwell* action be stayed pending resolution of the *Burrow* case or, at the very least, resolution of the upcoming motion for class certification.

As support, the Burrow Plaintiffs presented four reasons as to why these two cases should *not* be consolidated. First, the Burrow Plaintiffs contended that there was nothing to be gained from consolidation. For example, the Bedwell Plaintiffs' failure to sue the manufacturer, Forjas Taurus, as a defendant allegedly renders them incapable of pursuing full and complete relief for the proposed class in *Burrow*. As a result, the Burrow Plaintiffs believed that this omission places the Bedwell Plaintiffs in a weaker position to negotiate a successful resolution for the class if the cases are consolidated. Second, the Burrow Plaintiffs argued that their case will be substantially delayed if consolidated because they have made significant progress with document productions whereas the Bedwell Plaintiffs have conducted no discovery. Third, the Burrow Plaintiffs suggested that the individual claims for personal injury in the *Bedwell* case could make the Bedwell Plaintiffs more prone to compromise the class in a way that benefits their own interests over other class members. And finally, the Burrow Plaintiffs concluded that the personal injury claims in *Bedwell* should be allowed to continue in their own case while the class claims are subsumed in the *Burrow* action.

### 3. The Burrow and Bedwell Plaintiffs' Amended Response

On December 7, 2017, the Bedwell and Burrow Plaintiffs filed an amended response to Braztech's motion to consolidate. [D.E. 82]. Both sets of plaintiffs now agree with Braztech that the best way to protect the interests of absent class members is to have everyone in a single case represent both the .38 Special purchasers and the .57 Magnum purchasers. In other words, the plaintiffs claim that merging both cases will allow the Burrow Plaintiffs to represent the .38 Special purchasers and will also allow the Bedwell Plaintiffs to represent the .357 Magnum purchasers. Because the Burrow and Bedwell Plaintiffs agree to consolidate, they request that the Court address the following four issues so that these cases can proceed on the merits: (1) the filing of a master complaint, (2) the stay of the personal injury claims in *Bedwell*, (3) a modified Scheduling Order, and (4) the appointment of co-lead counsel.

Braztech does not oppose a stay of the personal injury claims in *Bedwell* or a modification of the Court's Scheduling Order. Braztech, however, opposes a merger of the two cases because it opens up a range of issues potentially prejudicial to Forjas Tauras – the manufacturer of the revolvers and a named defendant in *Burrow* but not *Bedwell*. Stated differently, Braztech takes issue with a merged case because the Bedwells would be able to assert new claims against a new defendant that they initially decided not to sue. Rather than merging the two cases, Braztech suggests that both cases should remain separate but proceed on parallel tracks for pretrial matters. In other words, a Scheduling Order and other

procedural orders would govern both cases and evidence gathered by any party could be used in either case. Braztech contends that this approach is the most efficient and reduces the burden on the parties and the Court without fundamentally changing the cases or the underlying claims. Because a complete merger of the two cases would present complicated procedural issues and prejudice Forjas Tauras, Braztech concludes that consolidation of the two cases for purposes of discovery and other pre-trial matters is the best way to dispose of all claims.

Braztech also argues that there is no need for the appointment of any interim class counsel because no class has been certified and therefore an appointment would serve no purpose. For example, Braztech suggests that the proposed classes in the two cases are materially different and do not overlap. The Bedwells seek to represent a proposed class of three models of Rossi branded .357 Magnum revolvers whereas the Burrow Plaintiffs seek to represent a proposed class of three models of Rossi branded .38 Special revolvers. Braztech believes that these classes are mutually exclusive (except in instances where a given person happens to be a member of both classes by virtue of owning both types of revolvers) and that the named plaintiffs and their law firms are not competing with each other to represent any proposed class. As such, Braztech concludes that appointment of interim class counsel is premature at this stage of the proceedings and that the Court should consider this issue if and when a class is certified.

Beginning with the first issue – on whether this case should be consolidated for pretrial matters or fully merged into one case – it is important to understand the

differences between the two concepts.  "[C]onsolidation . . . does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."  289 U.S. 479, 496-97 (1933); *see also Schnabel v. Lui*, 302 F.3d 1023, 1035 (9th Cir. 2002) ("The language of Rule 42(a) seems to authorize consolidation either as merger or as retaining separate character, but the majority of courts have held that consolidated actions retain their separate character."); *Cole v. Schenley Indus., Inc.*, 563 F.2d 35, 38 (2d Cir. 1977) (citing *Johnson v. Manhattan Ry.*, 289 U.S. 479, 496-97 (1933*); Garber v. Randell*, 477 F.2d 711 (2d Cir. 1973)) (holding that consolidation "does not change the rights of the parties in the separate suits.").  By contrast, a merger combines two or more actions into one case where each loses its separate identity and where a single judgment is rendered.  *See* 9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2382 (3d ed. 2014) (providing that "'consolidation' is used in three different senses" under Rule 42(a), including "when several actions are combined into one, lose their separate identity, and become a single action in which a single judgment is rendered").

In determining whether to consolidate a case, "[t]he moving party has the burden of persuading the court that consolidation is desirable, and the fact that a common question of law exists does not alone justify consolidation in the absence of other factors which would promote 'trial convenience and economy in administration.'" *Prudential Ins. Co. of Am. v. Marine Nat. Exch. Bank*, 55 F.R.D. 436, 437 (E.D. Wis. 1972) (citing *Schacht v. Javits*, 53 F.R.D. 321, 324–325

(S.D.N.Y. 1971)). Ultimately, however, "[t]he power of the court to order consolidation is discretionary." *Id*. We agree with all the parties that consolidation of pretrial matters – including discovery and class certification – is in the best interests of both cases. Consolidation allows the parties to coordinate depositions, share documents, and determine the character of any proposed class that plaintiffs seek to certify.

The only contested issue is whether these cases should be merged into one action or consolidated solely for discovery and class certification purposes. The primary objection from Braztech is that Forjas Taurus will be prejudiced because the Bedwells could assert new claims against a new defendant that they previously chose not to sue. Braztech's argument is not entirely unfounded. Yet, we cannot find that the level of prejudice to Forjas Taurus should bar the merger of these two cases. While the Bedwells did not initially sue Forjas Taurus in their case, discovery may have revealed that the Bedwells needed to sue the manufacturer. And in the absence of a Scheduling Order, there is no reason why the Bedwells cannot seek to amend their complaint and serve Forjas Taurus as a new defendant – thereby eliminating any prejudice to Forjas Taurus. Alternatively, the Burrow Plaintiffs could also seek leave to amend their complaint to add the Bedwells as additional class representatives, which would accomplish the same goal of having all model revolvers represented against Forjas Taurus. Either way, there are at least two ways that the Bedwells could still pursue their claims against Forjas Taurus, weakening any argument that Forjas Taurus will be prejudiced as a result

of a merged case.  Accordingly, *Bedwell* and *Burrow* shall be merged into one case pursuant to Rule 42 for all purposes, including trial.

The next issue is whether the Court should appoint interim class counsel. Federal Rule of Civil Procedure 23(g)(3) is a permissive rule which provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3). "Although the rule does not provide a standard for determining whether interim counsel should be appointed, courts that have construed it have relied on the Advisory Committee Notes accompanying the rule which limit its use to circumstances when interim counsel is necessary to protect the interests of the putative class."  *Carrier v. American Bankers Life Assur. Co.,* 2006 WL 2990465, *1 (D.N.H., Oct. 19, 2006).  The 2003 Advisory Committee Notes "provide that designation of interim counsel is unnecessary where . . . counsel that filed the class complaint is the only counsel seeking appointment and there is no rivalry or uncertainty between other firms."  *Jenkins v. Hyundai Motor Fin. Co.*, 2008 WL 781862, at *3 (S.D. Ohio Mar. 24, 2008) (citing Fed. R. Civ. P. 23(g)(2)(A), 2003 Advisory Committee Notes).

Here, appointing interim class counsel is unnecessary because there are no other lawyers competing for class counsel appointment and there are no other duplicative lawsuits pending in other courts.  "The type of situation in which interim class counsel is appointed is one in which overlapping, duplicative, or competing class suits are pending before a court, so that appointment of interim

counsel is necessary to protect the interests of class members." *Donaldson v. Pharmacia Pension Plan*, 2006 WL 1308582, at *1 (S.D. Ill. May 10, 2006). As the Manual for Complex Litigation suggests, the kinds of cases where interim counsel is appointed is where a large number of putative class actions have been consolidated or are otherwise pending in a single court:

> If . . . there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.

Manual for Complex Litigation (Fourth) § 21.11 (2004); *see also Smith v. Aon Corp.,* 2006 WL 1006052, at *2 (N.D. Ill. Apr. 12, 2006); *Turner v. Murphy Oil USA, Inc.,* 2006 WL 267333, at *1, *12 (E.D. La. Jan. 30, 2006); *Hill v. The Tribune Co.,* 2005 WL 3299144, at *3-5 (N.D. Ill. Oct. 13, 2005); *In re Delphi ERISA Litig.,* 230 F.R.D. 496, 497-99 (E.D. Mich. 2005).

Given the commentary to Rule 23 and the Manual for Complex Litigation (Fourth), appointment of interim counsel is inappropriate in this case because there is a single law firm seeking to represent the proposed class of .38 Special owners, and a different law firm proposing to represent the non-overlapping proposed class of .357 Magnum owners. Absent special circumstances, we prefer to consider the appointment of class counsel when there is a motion for class certification. Accordingly, there is no need to appoint interim class counsel at this time.

The final issues to address are (1) whether the personal injury claims – and the related counterclaims – in *Bedwell* should be stayed and (2) whether the Scheduling Order in *Burrow* should be modified. First, we agree with all the parties that a stay of the personal injury claims in *Bedwell* – along with the affirmative defense of apportionment – should be stayed while these cases are consolidated. This does *not* mean that any discovery related to these claims should be stayed, however, because items could be relevant to various matters in the merged action. Second, the Scheduling Order in *Burrow* needs to be modified because the deadlines are impracticable given the effect of merging the case with *Bedwell*. Therefore, the parties are directed to confer and advise the Court through a joint status report of how much additional time is needed to accommodate the merger of these two cases for all purposes, including trial. A joint status report shall be submitted within fourteen (14) days from the date of this Order. Upon review of the parties' submission, a revised Scheduling Order shall be entered.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED**:

A.    Braztech's motion to consolidate [D.E. 69] is **GRANTED in part** and **DENIED in part**. *William Burrow and Oma Louise Burrow v. Forjas Taurus and Braztech*, case no. 1:16-cv-21606-EGT, and *Suzanne M. Bedwell and Ernest D. Bedwell v. Braztech*, case No. 1:17-cv-22335-EGT, shall be merged for all further matters. A copy of this Order

shall be filed in both actions, but all further filings shall be submitted only in *Burrow*.

B.   The parties are directed to confer and advise the Court through a joint status report of how much additional time is needed to accommodate the merger of these two cases.  A joint status report shall be submitted within fourteen (14) days from the date of this Order.  Upon review of the parties' submission, a revised Scheduling Order shall be entered.

C.   The personal injury claims – and the related counterclaims – in *Bedwell* shall be stayed pending final disposition of the merged action in *Burrow*.

D.   The Burrow and Bedwell Plaintiffs shall file a consolidated complaint within twenty-one (21) days from the date of this Order.

E.   The appointment of interim class counsel at this time is **DENIED**.


**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of February, 2018.

/s/ *Edwin G. Torres*                        
EDWIN G. TORRES
United States Magistrate Judge