# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 16-21606-Civ-TORRES

WILLIAM BURROW, OMA LUISE
BURROW, SUZZANE M. BEDWELL,
individually and as mother and next
friend of R.Z.B., a minor, and ERNEST
D. BEDWELL, individually and as father
and next friend of R.Z.B., a minor.

        Plaintiffs,

v.

FORJAS TAURUS S.A. and BRAZTECH
INTERNATIONAL, L.C.,

        Defendants.

_____/

## ORDER ON PLAINTIFFS' MOTION TO COMPEL

This matter is before the Court on William Burrow's ("Mr. Burrow"), Oma
Louise Burrow's ("Mrs. Burrow"), Suzanne M. Bedwell's ("Mrs. Bedwell"), and
Ernest D. Bedwell's ("Mr. Bedwell") (collectively, "Plaintiffs") motion to compel
Forjas Taurus S.A. ("Forjas Taurus") and Braztech International, L.C. ("Braztech")
(collectively, "Defendants") to produce documents previously withheld under a claim
of privilege or, in the alternative, to produce to the Court the documents requested
for an *in camera* inspection.  [D.E. 73].  Defendants responded to Plaintiffs' motion
on May 24, 2018 [D.E. 74] to which Plaintiffs replied on May 31, 2018.  [D.E. 76].
Therefore, Plaintiffs' motion is now ripe for disposition.  After careful consideration

of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiffs' motion to compel is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

This is a products-liability case premised on specific revolvers that Forjas Taurus manufactured in Brazil and that Braztech imported into the United States. On February 5, 2014, Mrs. Burrow claims that she dropped her revolver on the ground and – despite the firearm being holstered with its safety latch engaged – it discharged a bullet into her leg. The Bedwells also experienced a drop-fire incident that resulted in a gunshot wound to their minor child. Therefore, Plaintiffs have brought this consolidated action on behalf of all owners of the defective firearms.

## II. ANALYSIS

Plaintiffs' motion relates to an internal investigation that Defendants conducted after Plaintiffs' firearm expert inspected a revolver. The documents, reports, and other correspondence related to Defendants' investigation form the basis of Plaintiffs' motion. Specifically, Defendants refuse to produce documents related to their internal investigation on the basis that they are protected under the attorney-client privilege, the self-critical analysis privilege, and/or the work product doctrine. While Plaintiffs generally agree that Defendants' privilege logs[1] meet the informational requirements for withholding documents, Plaintiffs conclude that Defendants' privilege objections are conclusory and that the items requested should be produced. We will discuss the parties' arguments in turn.

---

[1] Plaintiffs attached Defendants' privilege logs as exhibits to their motion.

**A. _The Work Product Doctrine_**

The first issue is whether Defendants may withhold items on the basis of the work-product doctrine. "The work product doctrine is distinct from and broader than the attorney-client privilege, and it protects materials prepared by the attorney, whether or not disclosed to the client, as well as materials prepared by agents for the attorney." *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 653 (S.D. Fla. 2009) (citing *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir. 1979)). "[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena,* 220 F.3d 406, 409 (5th Cir. 2000). Yet, this still requires the party asserting protection under the work product doctrine to demonstrate that the drafting entity anticipated litigation at the time the documents were drafted. *See CSX Transp., Inc. v. Admiral Ins. Co.,* 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995). This means that materials drafted in the ordinary course of business may de discoverable unless the items are not infused with a litigation purpose. *See Developers Sur. & Indem. Co. v. Harding Vill., Ltd.*, 2007 WL 2021939, at *2 (S.D. Fla. July 11, 2007) ("[E]ven if a document has some purpose within the ordinary course of business, the document is protected as work product if it is substantially infused with litigation purpose.").

In determining whether materials are protected, a court must determine when and why a contested document was created. *See, e.g. In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998) ("The 'testing question' for the work-product privilege

. . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"). And similar to the attorney-client privilege, "the burden is on the party withholding discovery to show that the documents should be afforded work-product [protection]." *Fojtasek,* 262 F.R.D. at 654 (citing *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir. 1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company,* 2006 WL 1733857 at *2 (M.D. Fla. June 20, 2006) ("[T]he party asserting work product privilege has the burden of showing the applicability of the doctrine") (citing *Grand Jury Proceedings v. United States,* 156 F.3d 1038, 1042 (10th Cir. 1998)).

Plaintiffs argue that – based on correspondence with opposing counsel and an in-depth review of Defendants' privilege logs – the vast majority (if not all) of the documents and materials that Defendants claim as work product relate to internal investigations and testing that Defendants performed on the Rossi revolvers. These documents include engineering reports, photographs, videos, technical drawings, and email correspondence. Defendants withheld these items because they were prepared in anticipation of litigation.[2]

Plaintiffs contend that Defendants' arguments are misplaced because, even when litigation may be forthcoming, work product protection is unavailable for

---

[3]    Plaintiffs note that Defendants' amended privilege log includes 78 documents in dispute, as opposed to 28 documents when Plaintiffs filed their motion to compel. Although much longer, Plaintiffs claim that the updated privilege log continues to suffer from the same shortcomings previously identified.

documents "that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998); *see also* Wright & Miller § 2024, at 346 ("[E]ven though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation"). Plaintiffs believe that Defendant had a business purpose to investigate and test their revolvers' safety mechanisms in order to (1) improve the overall performance of the firearms, (2) protect future purchasers of firearms from potential harm, and (3) to avoid or minimize negative publicity in connection with drop-fires and other product failures. Because Defendants performed their investigations without the threat of litigation, Plaintiffs conclude that the records and reports generated therefrom were prepared in the ordinary course of business and may not be withheld under the work product doctrine. *See Janicker by Janicker v. George Washington Univ.*, 94 F.R.D. 648, 649 (D.D.C. 1982) ("If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is producible in civil pretrial discovery.").

Defendants' response is that Plaintiffs have no knowledge or evidence that any of the items requested were created in the ordinary course of business. Contrary to Plaintiffs' speculations, Defendants claim that the documents withheld were created because of Plaintiffs' threats of litigation and that they cannot lose their protection simply because the items may or may not serve an ancillary

business purpose.  *See* Decl. of Dustin Sroufe at ¶ 10 ("The purpose or function of this report and any others drafted after Mr. Bumann notified us of the Burrow dispute, and along with any notes, high-speed videos, and photographs was to assist in, and because of, the defense of this lawsuit. Said another way, we would not have prepared the reports except for the existence of the Burrow dispute and lawsuit."); Decl. of Juliano Bisotto at ¶ 8 ("These reports and other materials generated in the engineering analysis such as high-speed videography, photographs, notes, computer-aided design drawings, and other technical drawings were all made to assist the companies' lawyers in the U.S. in defense of the Burrow and later Bedwell lawsuits.").

Defendants also take issue with Plaintiffs' claim that the Court should invalidate the work product doctrine because of Plaintiffs' substantial need and undue hardship.  Defendants argue, for example, that the relevancy of the discovery sought is not the standard to overcome the work product doctrine and that Plaintiffs must do more to compel the documents requested.  *See Stern v. O'Quinn*, 253 F.R.D. 663, 673 (S.D. Fla. 2008) ("The findings of relevance . . . do not end the Court's inquiry or dictate compulsion of Plaintiff's discovery requests.").  Defendants contend that Plaintiffs have no evidence that they attempted to obtain the information from another source and that Plaintiffs could readily purchase revolvers on their own to test their allegations of a defect in the Rossi revolvers. Because Plaintiffs' motion contains nothing more than unsubstantiated and

unsupported statements, Defendants conclude that Plaintiffs' motion to compel must be denied.

After a thorough review of the arguments presented and the relevant authorities, we find that the work-product doctrine cannot foreclose all of the items sought in Plaintiffs' motion. Defendants claim that their internal investigation occurred only *after* they received a December 28, 2015 letter from Plaintiffs notifying Defendants of a drop-fire incident involving a revolver. Defendants also suggest that they have no standard operating procedures for investigating firearm failures and that the only reason they engaged in any testing of the revolvers was because of a threat of ligation.

If we accept Defendants' representations as true – that the documents in dispute were created solely because of a litigation threat – the documents may be compelled if Plaintiffs can show (1) that there is a substantial need for the materials in the preparation of their case, and (2) an inability, without an undue hardship, to obtain the substantial equivalent of the materials by other means. This exception acts as a counterweight to the potentially broad reach of the work product doctrine and prevents it from being used as a tool to thwart good faith discovery efforts. *See State of Fla. ex rel. Butterworth v. Industrial Chemicals, Inc.,* 145 F.R.D. 585, 588 (N.D. Fla. 1991). Application of this exception requires a fact-based inquiry into the needs of the party seeking discovery as well as into the hardship that might be avoided by allowing discovery.

Before we determine whether the items sought are protected under the work-product doctrine, we must first clarify the difference between factual and opinion work product. The distinction is important because factual work product may sometimes be discoverable whereas opinion work product is almost always not. The Eleventh Circuit has held that the disclosure of factual work product may be compelled upon a requisite showing of substantial need and undue hardship whereas opinion work-product enjoys a nearly absolute immunity. To put it differently, opinion work product is only discoverable in "very rare and extraordinary circumstances." *Cox v. Admin. U.S. Steel & Carnegie,* 17 F.3d 1386, 1422 (11th Cir. 1994).

"[F]act work product may encompass factual material including the result of a factual investigation." *In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d at 183; *Boehringer Ingelheim Pharmaceuticals, Inc.,* 778 F.3d at 152 (reversing district court's determination that certain investigative documents were opinion work product, as opposed to fact work product because they did not reveal "counsel's legal impressions or views of the case"); *see also Director, Office of Thrift Supervision v. Vinson & Elkins, LLP,* 124 F.3d 1304, 1307 (D.C. Cir. 1997) ("[P]urely factual material embedded in attorney notes" may not be opinion work product). On the other hand, opinion work product is given greater protection because it contains "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Opinion work product "enjoys a nearly

absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) (quoting *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977). In fact, "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman,* 329 U.S. at 510. Therefore, to the extent that Plaintiffs can overcome the work product doctrine, only those items that constitute factual work product may be produced.

A non-exhaustive list of factors are assessed in determining substantial need including: (1) the importance of the materials to the party seeking them for case preparation, (2) the difficulty the party will have obtaining them by other means, and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks. *See* Fed. R. Civ. P. 26, Advisory Comm. Notes (1970 amds.); *see also F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 155 (D.C. Cir. 2015) ("[A] moving party's burden is generally met if it demonstrates that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and 'special circumstances' excuse the movant's failure to obtain the requested materials itself.").

Here, Plaintiffs seek engineering reports and other technical documents to determine what Defendants knew about any potential defects in their firearms and Defendants' knowledge about the revolvers' propensity to fail. The importance of the documents requested cannot be understated because "it is beyond dispute that

[Plaintiffs] need the information requested," and that they "contain[] the evidence upon which [Plaintiffs] base[] their complaint." *Resolution Tr. Corp. v. Heiserman*, 151 F.R.D. 367, 375 (D. Colo. 1993). All of Plaintiffs' allegations relate to the alleged defects in Defendants' firearms and courts "have found substantial need by emphasizing the importance of the documents themselves." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1241 (5th Cir. 1982). Indeed, a "common justification for discovery is the claim which relates to the opposite party's knowledge that can only be shown by the documents themselves." *Id.* (citing *Bird v. Penn Central Co.,* 61 F.R.D. 43 (E.D. Pa. 1973); *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.,* 296 F. Supp. 979, 983 (E.D. Wis. 1969)). Because the items requested are essential to the allegations in the consolidated complaint, Plaintiffs have met the first factor to overcome the work product doctrine.

As for the second and third factors, we are unconvinced that there are alternative means for Plaintiffs to acquire the information requested because the data Plaintiffs seek can only be found within Defendants' engineering reports and other technical documents. While Defendants suggest that Plaintiffs can obtain the same information via other means – such as depositions or affidavits – nothing can provide a substantial equivalent of the raw data and technical information contained within the documents themselves. *See Adams v. Gateway, Inc.*, 2003 WL 23787856, at *15 (D. Utah Dec. 30, 2003) ("As to any work product items which are 'factual' work product, substantial need and undue hardship will probably be present by the inherent nature of [a] technical project"); *Foley v. Juron Assocs.*, 1986

WL 5557, at *2 (E.D. Pa. May 13, 1986) (ordering production of engineering reports in a securities case because "[t]he knowledge acquired from the [engineering] reports can realistically be shown only by the facts contained in the documents themselves.") (citing *In re International Systems and Controls Corporation Securities Litigation*, 693 F.2d at 1235). Therefore, we conclude that Plaintiffs have met all three factors to demonstrate a substantial need.

As further support that Plaintiffs have demonstrated a substantial need, our review of the relevant case law suggests that engineering reports, pictures, and videos should be produced in cases like these because parties seeking discovery have few ways to acquire this information or a substantial equivalent thereof. *See, e.g.*, *Gillespie v. Charter Communications*, 133 F. Supp. 3d 1195 (E.D. Mo. 2015) (ordering the production of incident reports in a discrimination case because plaintiff had no other means to obtain the documents requested); *F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 157–58 (D.C. Cir. 2015) (finding that the FTC had shown a substantial need and undue hardship for materials relating to financial analyses and forecasts in an unfair trade practices case); *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 142 (D.D.C. 2012) (ordering the production of an audit report in a case where the federal government sought to enforce a subpoena on the basis that a report was the only evidence available to determine when a contractor became aware of any potential overpayments made on the government contract, which went to the heart of the government's case); *Huggins v. Fed. Express Corp.*, 250 F.R.D. 404, 407 (E.D. Mo

2008) (ordering the production of photographs because of the plaintiff's inability to obtain equivalent information in a negligence case); *see also Harris v. Provident Life & Accident Ins. Co.*, 198 F.R.D. 26 (N.D.N.Y. 2000) (ordering the production of medical reports because they were critical to the defense in showing that the insured did not have a latex allergy and that there was no breach of a disability insurance policy); *Peterson v. Wallace Computer Servs., Inc.*, 984 F. Supp. 821, 826 (D. Vt. 1997) (finding in a sexual harassment suit by a former employee that a plaintiff had a substantial need to review notes and memoranda prepared by the employer's employees during their investigation into the plaintiff's sexual harassment allegations); *Nationwide Mut. Fire Ins. Co. v. Smith*, 174 F.R.D. 250, 253 (D. Conn. 1997) (ordering the production of information about meetings and conversations with experts in a bad faith action where insureds were entitled to discovery about how the insurer processes fire claims and why it denies those claims); *Varuzza by Zarrillo v. Bulk Materials, Inc.*, 169 F.R.D. 254, 257 (N.D.N.Y. 1996) (ordering the production of a statement that the plaintiff gave to an insurance investigator following an accident in a personal injury case because although the statement fell within the scope of the work product doctrine, defendants needed the statement to assist in filling the gaps in plaintiff's testimony and for impeachment purposes).

While all of the cases above involve many different causes of action, the reasons why these items were compelled – notwithstanding the work product doctrine – remain the same. That reasoning is premised on the determination of

whether certain types of items – including investigative reports, technical data, photos, and videos – are so unique and essential to the facts of a case that they must be produced. Courts have often compelled the production of *photographs* and videos because other discovery devices cannot act as an adequate substitute for the unique content found therein. *See, e.g.*, *Zoller v. Conoco, Inc.*, 137 F.R.D. 9, 10 (W.D. La. 1991) (ordering the production of photographs in a personal injury action because the plaintiff was unable to obtain a substantial equivalent to the content of a picture other than the picture itself). The same reasoning applies to the facts of this case because – without the documents Plaintiffs seek – there is nothing in the record to suggest that Plaintiffs can acquire the same information or a substantial equivalent thereof.

As to whether Plaintiffs have established an undue hardship, Plaintiffs' argument is again well taken. While Plaintiffs retained a firearms expert to inspect the revolvers after their respective drop-fires, it would be difficult – not to mention wasteful – for Plaintiffs to attempt to replicate Defendants' complex investigation when the information sought is readily available. It would also be unnecessarily expensive for Plaintiffs to replicate Defendants' investigation because, while Plaintiffs retained an expert to inspect Plaintiffs' firearms, their lawsuit is not limited to their own guns. Rather, Plaintiffs seek to represent a class action of all owners of Rossi revolvers on the basis that the safety mechanisms are defectively designed and/or manufactured and that Defendants were aware of these defects but failed to take remedial action.

Since Defendants have already performed their extensive research using their unique testing protocols, there is no persuasive reason to withhold those items any longer. Plaintiffs lack the facilities, equipment, technology, staffing, and expertise to replicate Defendants' testing and analysis. Plaintiffs have little to no knowledge, when compared to Defendants, of what type of tests Defendants performed, how they were performed, or the results. Because Plaintiffs have demonstrated a substantial need and an undue hardship, we hold that Defendants' engineering reports, photos, videos, and other technical documents cannot be withheld on the basis of the work product doctrine.[3]

## B. *The Self-Critical Analysis Privilege*

The second issue is whether Defendants may withhold documents on the basis of the self-critical analysis privilege (the "SCA Privilege"). Defendants argue that several district courts in the Eleventh Circuit have recognized the SCA privilege and that Plaintiffs' reliance on cases holding otherwise are misplaced. *See Reid v. Lockheed Martin Aeronautics Co.*, 199 F.R.D. 379, 385 (N.D. Ga. 2001) ("Having determined that the SCA applies, the court must now decide the proper

---

[3]    While Plaintiffs have overcome the qualified protections of the work product doctrine, we limit our finding to the production of factual work product in Defendants' engineering reports, photos, and videos. This means that, if we compel Defendants to produce these items to Plaintiffs (which cannot be determined until we examine the attorney-client privilege as discussed below), Defendants should redact any opinion evidence that may exist in these items. As for the remaining items withheld on Defendants' privilege log, we cannot determine at this point whether the work product doctrine applies. As such, Plaintiffs' motion is **GRANTED** to the extent that Defendants are compelled to produce to the Court all remaining items withheld on their privilege log so that we can conduct and *in camera* review and assess the applicability of the work product doctrine.

scope of the privilege and whether the withheld documents fall within the privilege."); *Reichhold Chemicals, Inc. v. Textron, Inc.*, 157 F.R.D. 522, 527 (N.D. Fla. 1994) ("I conclude that the self-evaluation privilege promotes the interests of justice and should be applied in appropriate environmental cases, just as in other kinds of cases.").

Defendants rely, in part, on an old Fifth Circuit decision where the Court found that post-accident reports of a railroad investigating an accident is subject to discovery only after a "strong showing of 'necessity or justification, 'hardship or justice' similar to that required to overcome the qualified immunity from discovery conferred upon the work product of an attorney under *Hickman v. Taylor*." *S. Ry. Co. v. Lanham*, 403 F.2d 119, 132 (5th Cir. 1968) (alterations added). Defendants claim that the same reasoning applies here because Plaintiffs have not met their burden of establishing a strong necessity or justification for the items requested.

Defendants' arguments are unpersuasive because while the SCA Privilege "has been recognized by some courts," it has never been "fully embraced by courts in our district or circuit." *Hill v. Celebrity Cruises, Inc.,* 2010 WL 5419006, at *2 (S.D. Fla. Dec. 23, 2010); *see also Jones v. Carnival Corp.,* No. 04–20407–CIV, ECF No. 136 (S.D. Fla. Sept. 27, 2005) ("[T]he Eleventh Circuit has yet to recognize the self-critical analysis privilege"). The Federal Rules do not recognize the privilege, either. *See Hill,* 2010 WL 5419006, at *2. We have reviewed an abundance of cases both in and outside our Circuit and the overwhelming majority of decisions have rejected this privilege. And while the Eleventh Circuit has not weighed in on this

issue, "four circuits," have agreed that this is not a recognized privilege. *See Berner v. Carnival Corp.*, 2009 WL 982621, at *1 (S.D. Fla. Apr. 10, 2009).

Even in those rare cases adopting the privilege, they limit its applicability "only to subjective impressions and opinions in a written report, not objective facts". *In re Air Crash Near Cali, Colombia on December 20, 1995,* 959 F. Supp. 1529, 1532 (S.D. Fla. 1997). Because the SCA Privilege "has not been codified by Rule 26, adopted by the Supreme Court, the Eleventh Circuit Court of Appeals, or the Florida Supreme Court," Defendants have no basis to withhold documents under this privilege. *Jaber v. NCL (Bahamas) Ltd.*, 2014 WL 12629670, at *5 (S.D. Fla. Oct. 24, 2014).

## C. *The Attorney-Client Privilege*

The final issue is whether the discovery sought is protected under the attorney-client privilege. State law governs the application of the attorney-client privilege in a federal diversity action. [D.E. 74]; *see also Bivins v. Rogers*, 207 F. Supp. 3d 1321, 1324 (S.D. Fla. 2016) (finding that "[s]tate law provides the rule of decision in diversity actions where a party asserts the attorney-client privilege."); *see also Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 696 (S.D. Fla. 2007) ("Florida law governs application of the attorney-client privilege in a federal diversity action.") (citing *Bradt v. Smith,* 634 F.2d 796, 800 (5th Cir. 1981)). Under Florida law, "a client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the

rendition of legal services to the client." Fla. Stat. § 90.502(2). In other words, the privilege applies to "confidential communications made in the rendition of legal services to the client." *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1380 (Fla. 1994) (citing Fla. Stat. § 90.502). The confidentiality of attorney-client privileged communications "is an interest traditionally deemed worthy of maximum legal protection." *State Farm Fla. Ins. Co. v. Puig,* 62 So. 3d 23, 27 (Fla. 3rd DCA 2011).

The burden of establishing the privilege rests on the party claiming it. While not absolute, the privilege has long been understood to encourage clients to completely disclose information to their attorneys to allow for the rendition of competent legal advice and "thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). "Because application of the attorney-client privilege obstructs the truth-seeking process, it must be narrowly construed." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013) (footnote omitted).

As for the attorney-client privilege in connection with corporate entities, the Florida Supreme Court has subjected claims of privilege to a heightened level of security "to minimize the threat of corporations cloaking information with the attorney-client in order to avoid discovery . . . ." *Southern Bell Tel. & Tel. Co.*, 632 So. 2d at 1383; *see also In re Denture Cream Prod. Liab. Litig.*, 2012 WL 5057844, at *5 (S.D. Fla. Oct. 18, 2012) ("The Florida Supreme Court has held that, unlike a

claim of attorney-client privilege made by an individual, a claim of privilege raised by a corporation is subject to a 'heightened level of scrutiny.'") (quoting *Southern Bell Tel. & Tel. Co.,* 632 So. 2d at 1383)); *First Chicago International v. United Exchange Co. Ltd.,* 125 F.R.D. 55, 57 (S.D.N.Y. 1989) ("Any standard developed, therefore, must strike a balance between encouraging corporations to seek legal advice and preventing corporate attorneys from being used as shields to thwart discovery."). Therefore, to establish that communications are protected under the attorney-client privilege, Defendants – as corporate entities – must meet the following five requirements:

> (1) the communication would not have been made but for the contemplation of legal services;
> (2) the employee making the communication did so at the direction of his or her corporate superior;
> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
> (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Southern Bell Tel. & Tel. Co.*, 632 So. 2d at 1383.

Plaintiffs advance two main arguments in support of their position that the discovery sought cannot be withheld under the attorney-client privilege. First, Plaintiffs contend that the privilege does not apply because only two withheld items were prepared or sent by an attorney. [D.E. 73]. And with respect to those two communications, Plaintiffs argue that they should still be produced because there is no indication that the primary purpose was to solicit legal advice. As support,

Plaintiffs rely on the Florida Supreme Court's decision in *Southern Bell*, where the Court found that investigative audits, panel recommendations, and statistical analysis were not communications for purposes of the attorney-client privilege. *See Southern Bell Tel. & Tel. Co.*, 632 So. 2d at 1384-87. Plaintiffs claim that the only items that the attorney-client privilege protected in that case were statements made from Southern Bell employees *directly* to counsel. Because communications in this case fail to meet that standard, Plaintiffs conclude that their motion to compel must be granted.

Second, Plaintiffs argue that the presence of counsel in an email is no basis to automatically withhold items under the attorney-client privilege because Defendants failed to show that the primary purpose of the communication was to render legal advice. *See In re Seroquel Prod. Liab. Litig.*, 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008) ("No misconception seems to be more common . . . than the belief that if a document or draft has been through the hands of an attorney, it thereby automatically becomes enshrouded in privilege's veil of secrecy . . . Nothing is further from reality Insulation from discovery cannot be so readily or fraudulently obtained."). Making matters worse, Plaintiffs claim that Defendants' privilege log includes bare assertions of privilege that – if found to be sufficient – would undermine the decision in *Southern Bell* because corporations could easily sidestep their discovery obligations and impede the truth-finding process.

In response, Defendants argue that Plaintiffs' motion lacks merit because there is no need for a communication to include a lawyer to be protected under the

attorney-client privilege. [D.E. 73]. *See, e.g.*, *In re Denture Cream Products Liab. Litig.*, 2012 WL 5057844, at *13 (S.D. Fla. Oct. 18, 2012) ("[S]imply because a communication is made between two corporate employees, neither of whom are attorneys, that fact is not determinative of whether that communication primarily involves business advice rather than legal advice for purposes of the attorney-client privilege to that correspondence."). Defendants concede that not every communication on their privilege log constitutes the proffering of legal advice. But, Defendants believe that this is immaterial because the decision in *Southern Bell Tel. & Tel. Co.* did not hold that a communication must contain actual legal advice. Instead, Defendants claim that a communication must *relate* to legal services being rendered. *See Southern Bell Tel. & Tel. Co.*, 632 So. 2d at 1383 (stating that the content of the communication must relate to the legal services being rendered).

Defendants also suggest that, if the attorney-client privilege only applies to communications sent to and from attorneys, it would eviscerate one of the legal profession's oldest protections. *See Eutectic Corp. v. Metco, Inc.*, 61 F.R.D. 35, 38 (E.D.N.Y. 1973) (stating that "there is no requirement that, in a strict sense, the attorney or his representative must be either the sender or recipient of a confidential communication, but only that the communication, if made between representatives of the client, must be specifically for the purpose of obtaining legal services for the client."). For example, one of Defendants' employees, Dustin Sroufe, claims that his communications should be protected because he was following the

directions of his attorneys and that the contents of his emails may reveal the substance of legal advice:

> In my position, I am sometimes directed by my superiors to assist and work under the direction of the companies' lawyers to investigate, evaluate, and analyze the mechanical performance and functioning of various firearms at issue in disputes or lawsuits filed against my employer, which does not have lawyers in-house. In connection with these investigations, I sometimes direct the work of engineers under my leadership, or work with Forjas Taurus's engineers in Brazil.

[D.E. 74-3]. Because all of the documents identified on Defendants' privilege log relate to legal services being rendered, Defendants conclude that they have met their burden and that the items sought must be protected under the attorney-client privilege.

We agree with Defendants that the attorney-client privilege does not require an attorney's presence on a communication in order for the privilege to apply. As a general matter,

> [S]imply because a communication is made between two corporate employees, neither of whom are attorneys, that fact is not determinative of whether that communication primarily involves business advice rather than legal advice for purposes of applying the attorney-client privilege to that correspondence. To conclude otherwise would result in a somewhat absurd finding that a document generated for purposes of obtaining and/or assisting in the transmission of legal advice would not only lose its privileged character, but would be artificially viewed as primarily a business communication merely because the author and recipient were not attorneys.

*In re Denture Cream Products Liab. Litig.,* 2012 WL 5057844, at *13 (S.D. Fla. Oct. 18, 2012); *see also In re Vioxx Products Liab. Litig.,* 501 F. Supp. 2d 789, 811 (E.D. La. 2007) (finding that a privilege applies not only to communications between

corporate employees and corporation's counsel, but also to communications among corporate employees discussing or transmitting counsel's advice); *Weeks v. Samsung Heavy Indus. Co.,* 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996) ("A privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation.") (internal citations omitted).

This means that the lack of attorneys on either side of an otherwise confidential corporate communication is not fatal to a claim of privilege. However, the lack of any lawyer involvement can still be a "factor tending to weigh against Defendants in showing the privileged nature of that communication." *United States v. Davita, Inc.*, 301 F.R.D. 676, 682 (N.D. Ga. 2014). "The ultimate touchstone for application of the privilege . . . is whether the communication revealed advice from, or a request for advice made to, an attorney in some fashion." *Id.*

By the same token, a communication is not necessarily privileged simply because a lawyer is copied. As the proponent of the privilege, Defendants must show, irrespective of whether one or more lawyers sent or received the communication, that the communication was confidential and that the primary purpose of the communication was to relay, request or transmit legal advice. *See, e.g., U.S. ex rel. Baklid–Kunz v. Halifax Hosp. Med. Cen.,* 2012 WL 5415108, at *4 (M.D. Fla. Nov. 6, 2012). Thus, "[w]here a lawyer provides non-legal business

advice, the communication is not privileged." *Wachtel v. Health Net, Inc.,* 482 F.3d 225, 231 (3rd Cir. 2007). Because the attorney-client privilege only applies to communications made in confidence, a communication loses its protection if made in the presence of third parties, or disseminated beyond the group of corporate employees "who have a need to know in the scope of their corporate responsibilities." *In re Vioxx,* 501 F. Supp. 2d at 796.

Plaintiff is correct that Defendants' prior privilege log contains conclusory descriptions of some of the withheld documents. But the day after Plaintiffs filed their motion to compel, Defendants (1) amended their privilege log to provide better descriptions of the privileged communications, and (2) removed several documents in favor of their production. As the privilege log stands now, there are numerous documents that may or may not be protected under the attorney-client privilege. Only an *in camera* inspection will be able to resolve the parties' dispute on whether the attorney-client privilege applies to the email communications, memos, and other forms of correspondence on Defendants' privilege log. Therefore, in abundance of caution and to safeguard one of the legal profession's oldest protections between a lawyer and client, Defendants shall produce to the Court all forms of correspondence on their privilege log for an *in camera* inspection. This will allow the Court to determine whether the materials fall within the confines of the attorney-client privilege.

As to Defendants' engineering reports, photos, and videos, we are unconvinced that these items fall within the confines of the attorney-client

privilege. Defendants suggest on their privilege log that the information cannot be disclosed because it was ultimately sent to their attorneys. But, as the proponent of the privilege, Defendants failed to carry their burden of establishing that it applies to these items. Defendants also failed to rebut Plaintiffs' argument that these items contain nothing more than mere technical information. Indeed, there is no suggestion that "[t]hese test results and other technical information, taken by themselves, are clearly not privileged." *Champion Int'l Corp. v. Int'l Paper Co.*, 486 F. Supp. 1328, 1331 (N.D. Ga. 1980).

Moreover, the fact that these items may have been sent to Defendants' attorneys does not make them privileged. *See id.* ("That the test results were sent to plaintiff's attorney cannot make them privileged"). Defendants appear to rely on a common misconception about the attorney-client privilege, which is the "belief that if a document or draft has been through the hands of an attorney, it thereby automatically becomes enshrouded in privilege's veil of secrecy." *In re Seroquel Prod. Liab. Litig.*, 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008). This is not the law because an attorney's tangential involvement would effectively immunize all documents relating to internal investigations. *See id.* ("[T]his 'collaborative effort' argument, if successful, would effectively immunize all internal communications of the drug industry, thereby defeating the broad discovery authorized in the Federal Rules of Civil Procedure.") (quoting *In re Vioxx,* 501 F. Supp. 2d at 796).

Because Defendants (1) failed to present a viable argument on why their engineering reports, photos, and videos do not contain anything more than technical

information, and (2) failed to carry their burden in showing how the attorney-client privilege applies to these items, we conclude that they must be produced. *See, e.g.*, *Zoller v. Conoco, Inc.*, 137 F.R.D. at 10 ("The court fails to understand why these photographs contain confidential information or reflect the advice of an attorney."); *NXP B.V. v. Research in Motion, Ltd.*, 2013 WL 12158602, at *2 (M.D. Fla. Mar. 14, 2013) ("Technical information is not confidential."). Accordingly, Plaintiffs' motion to compel Defendants to produce their engineering reports, photos, and videos is **GRANTED**. Defendants shall produce these items to Plaintiffs within fourteen (14) days from the date of this Order. As for the remaining items on Defendants' privilege log, Defendants are compelled to produce these materials to the Court for an *in camera* review.[4]

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' motion to compel is **GRANTED in part** and **DENIED in part**:

A.     Plaintiffs' motion to compel Defendants to produce their engineering reports, photos, videos, and other technical documents is **GRANTED**. Defendants shall produce these items to Plaintiffs within fourteen (14) days from the date of this Order.

B.     Plaintiffs' motion to compel Defendants to produce to the Court all remaining items on Defendants' privilege log for an *in camera* review is

---

[4]     The *in camera* review will assess the applicability of both the work product doctrine and the attorney-client privilege for all remaining items on Defendants' privilege log that do not constitute engineering reports, photos, videos, or other technical documents.

**GRANTED**.  Defendants shall produce these items to the Court within fourteen (14) days from the date of this Order.  After the *in camera* review is completed, a separate Order shall follow.

C.      Plaintiffs' motion to compel all documents on Defendants' privilege log, absent an *in camera* review, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of August, 2018.[5]

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[5]      Plaintiffs' motion for leave to file supplemental evidence in support of its motion to compel is **DENIED as moot**.  [D.E. 85].