# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-21606-Civ-TORRES

WILLIAM BURROW, OMA LOUISE BURROW,
ERNEST D. BEDWELL, AND
SUZANNE BEDWELL,

        Plaintiffs,

v.

FORJAS TAURUS S.A. and BRAZTECH
INTERNATIONAL, L.C.,

        Defendants.

_____/

## ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT AND RULE 54(b) FINAL JUDGMENT ON CLASS CLAIMS

This matter is before the Court on the Proposed Class Representatives' Unopposed Motion for Final Approval of Class Action Settlement (D.E. 135; "the Motion") filed on August 19, 2019, and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Incentive Award (D.E. 132; "the Fee Motion"), filed on June 10, 2019. Plaintiffs assert they have complied with the requirements of the Court's Preliminary Approval Order (D.E. 130) and now request that the Court finally approve the terms of the settlement as set forth in the Class Action Settlement Agreement and Release (D.E. 127-2), including the incentive award and attorneys' fees provisions.

The Court held a fairness hearing on August 27, 2019, to consider any arguments in support of or in opposition to the Motion or the Fee Motion. Only counsel for the parties appeared at the hearing; no class member or objector appeared to present any opposition to the motions.

For the reasons that follow, as well as the Court's review of the entire record that includes one filed objection to the proposed class settlement, the Court finds that the Motion and Fee Motion are now **GRANTED**, and the proposed settlement is **APPROVED** as a Final Order of the Court. A Rule 54(b) Judgment is hereby entered on all class claims, with the Court retaining jurisdiction in this pending action over any individual non-class claims.

## I.  BACKGROUND

On May 5, 2016, William Burrow and Oma Louise Burrow, filed a proposed class action complaint styled *Burrow, et al., v. Forjas Taurus, S.A., et al.*, Case No. 1:16-cv-21606-EGT, in the United States District Court for the Southern District of Florida, alleging that their Rossi brand .38 Special Revolver was defective in that it fired when dropped, and asserting certain causes of action in relation thereto.

On September 16, 2016, Suzanne Bedwell filed a proposed class action complaint in the United States District Court for the District of Alaska, Case No. 3:16-cv-00217-JWS, asserting that her Rossi brand .357 Magnum Revolver was defective in that it fired when dropped, and asserting certain causes of action in relation thereto. In an amended complaint filed with leave of court on June 12, 2017, Ernest Bedwell joined in case, asserting claims on behalf of himself and a proposed

class. Thereafter, the Bedwell case was transferred to the United States District Court for the Southern District of Florida.

By order dated February 9, 2018, the Court ordered the Burrow and Bedwell cases consolidated and merged into the Burrow action, provided, however, that the personal-injury claims of the Bedwells on behalf of themselves and their minor son should be stayed pending final disposition of the merged proposed class action in the Burrow case. (D.E. 51).

On March 2, 2018, Plaintiffs filed their First Amended and Consolidated Class Action Complaint (D.E. 54). Plaintiffs asserted class claims for breach of warranty, strict products liability, negligence, and FDUTPA, seeking damages, injunctive and other relief against the Defendants in connection with alleged defects in the design and manufacture of the Class Revolvers. Plaintiffs sought damages and equitable relief only premised on alleged economic losses, and did not seek to recover for any member of the proposed class any relief for personal-injury or property-damage claims.

Forjas Taurus and Braztech filed separate Answers and Affirmative Defenses to the First Amended Class Action Complaint on April 13, 2018 (Docs. 68 and 69), denying certain factual allegations, denying liability, and denying that the claims made are amenable to class treatment.

Thereafter, Plaintiffs and Defendants engaged in voluminous and extensive written discovery and depositions regarding the claims and defenses at issue in the Action. Plaintiffs and litigated various discovery issues and sought the assistance of

the Court in advancing discovery on multiple occasions. Class Counsel deposed numerous witnesses, including representatives of Forjas Taurus and Braztech, many of which had to be conducted through interpreters as a result of the Forjas Taurus's Brazilian origin. Class Counsel retained an expert engineer to inspect and test the subject revolvers and other class revolvers produced and sold by Forjas Taurus and Braztech during the class period. Detailed x-rays and inspections of the four Bedwell revolvers and four Burrow revolvers were conducted by the Parties and their respective experts. Depositions of the Bedwell Plaintiffs, witnesses, law enforcement, and experts were taken in Alaska. Throughout these events, the parties vigorously litigated this action.

The Parties engaged in substantial and prolonged settlement negotiations with Mediator Terrence White, an experienced independent mediator. Between September 11, 2018 and November 7, 2018, the Parties engaged in five separate full-day mediation sessions. At least twice, the settlement process broke down entirely and litigation resumed. Finally, on November 7, 2018, the Parties agreed to the settlement terms that are reflected in the proposed Settlement Agreement. For several weeks thereafter, counsel for Plaintiffs and Taurus negotiated the terms of a Term Sheet memorializing the agreement reached on November 7, 2018, and in the ensuing months negotiated the terms of the formal Settlement Agreement being presented to the Court.

On March 15, 2019, the Court entered the Preliminary Approval Order preliminarily approving the parties' proposed class settlement, approving the notice

plan, and setting a final fairness hearing. (D.E. 130). The Settlement Class is comprised of all individuals in the United States, including territories and possessions, who owned one or more Class Revolver(s) on the March 15, 2019 (the Preliminary Approval Date). (*Id.* at p. 4-5).

After distributing notice of the Settlement to the Settlement Class Members in accordance with the approved Class Notice Plan, the Plaintiffs filed the pending Motion that seeks final approval of the Settlement. (D.E. 135). In support of the Motion, Plaintiffs attached the declaration of the Settlement Administrator, Cameron R. Azari (D.E. 135-3) ("Azari Decl.") and the declaration of Kimberly Dorsey from Braztech, the party responsible for conducting the Early Warning Program and providing the Enhanced Warranty Service under the Settlement. ("Dorsey Decl.").

## II. THE APPROVED SETTLEMENT

The Settlement provides for the following class and relief:

### A. *The Settlement Class*

The Settlement Class is defined as:

> All individuals in the United States, including its territories and possessions, who owned one or more Class Revolver(s) on March 15, 2019, the Preliminary Approval Date.

(D.E. 127-2, ¶ 44 and D.E. 130, p. 4).

The term "Class Revolvers" in the above definition includes all Rossi brand .357 Magnum and .38 Special revolvers of the following models—R35102, R35202, R85104, R97206, R97104, R46202, R46102—manufactured by Forjas Taurus between January 1, 2005 and December 31, 2017, as indicated by the serial number

stamped on the frame of the revolver beginning with the letters Y, Z, A, B, C, D, E, F, G, H, I, J, or K.  There are or were approximately 255,000 Class Revolvers manufactured during the Class Period that were sold in the United States.

Excluded from the Settlement Class are (a) all state, local, or federal bodies or agencies, etc., or Persons in an official capacity; (b) the District Judge and Magistrate Judge to whom the Action is assigned and any appellate judge assigned to any appeal in the Action, together with any member of their staffs and immediate families; (c) any Successful Opt-Out, and (d) any other Person who has been recognized by Order of the Court as excluded from the Settlement Class for any reason.

### B.  *Class Relief and Release*

There are four primary components to this Settlement: (1) the Safety Warning; (2) an Enhanced Warranty automatically extended to present and future owners of all Class Revolvers; (3) an Enhanced Warranty Service that provides for the free shipping, inspection, repair and/or replacement, certification and cleaning of each Class Revolver; and (4) an Inconvenience Payment of $50 to compensate Class Members for having to have their Class Revolver(s) inspected.

Any court-approved attorneys' fees, litigation costs and incentive awards of Class Counsel and the Class Representatives are to be paid separately and in addition to the relief available to the Settlement Class Members.  Additionally, Defendants have separately funded the costs of notice and settlement administration. (D.E. 127-2, § III.C.2.).  Any persons who wished to pursue individual claims for damages were given the opportunity to do so by opting out of the Settlement Class.

## 1. The Safety Warning Program or "Early Warning Program"

This Program was negotiated during the Parties' first mediation session. It was designed and intended to make current and future owners of Class Revolvers immediately aware of the potential dangers with Class Revolvers and to inform them that the Class Revolvers should not be used or carried until they had been inspected and/or repaired. The Early Warning Program included prominent print ads in *American Rifleman* magazine and several digital ads on Gunbroker.com (1,000,000 impressions), GunsandAmmo.com (700,000 impressions), and on NRA.org (2,500,000 impressions). (*See* D.E. 127-3, Azari Dec.).

The ads advised owners of Class Revolvers to immediately stop using them and to call a provided toll-free telephone number or visit the www.RossiSafetyNotice.com website for detailed information. The ads were written in plain language, free from legalese, and clearly identified that the warning was from the manufacturer. The ads also referenced the *Burrow, et al. v. Forjas Taurus S.A., et al.* litigation and case name specifically.

The Early Warning Program also included a direct "SAFETY WARNING" notice that was sent to known dealers of the Rossi revolvers. The dealer notice requested dealers to prominently display an enclosed, colored SAFETY WARNING "flyer" in their shop to make it visible and easy to read by customers. The flyer was an easy-to-read warning that explained the potential danger posed by the revolvers and provided instructions to owners. (D.E. 127-3, Attachment 5).

## 2.    The Enhanced Warranty and Enhanced Warranty Service

The "Enhanced Warranty" is extended to current and future owners of Class Revolvers as part of this Settlement, and is provided over and above the existing warranty available to owners of Rossi revolvers.  Owners may take advantage of the Enhanced Warranty by submitting their Class Revolvers to Braztech one time for Enhanced Warranty Service at any time in the future.  The Enhanced Warranty Service includes the following components:

(1) **Shipping Benefits** including the delivery to the Settlement Class Member's address pre-paid shipping labels for shipping through Fed Ex or other accepted shipping company so that Class Revolvers can be safely shipped to Braztech for inspection at no cost to the Settlement Class Member.

(2) **Inspection Procedure** whereby Braztech (as warranty service provider in the United States for Forjas Taurus) will take possession of the Class Revolver, and disassemble the firearm to the extent necessary to determine whether the Alleged Defects are or may be present and whether such Class Revolver may be serviced or repaired to address and eliminate any of the Alleged Defect(s).

(3) **Repair Procedure** whereby Braztech will replace any internal components of the Class Revolver deemed necessary to eliminate any of the Alleged Defects found during the Inspection Procedure.

(4) **Replacement Procedure** whereby if Braztech determines that a particular Class Revolver, for any reason, cannot be serviced or repaired

in such a way as to render it safe for its intended use, Braztech will deliver to the Settlement Class Member a new Taurus-brand revolver of similar caliber, and size, free of charge.

(5) **Certification Procedure** whereby Braztech will, for each Class Revolver that has been through the Inspection and Repair Procedures and been deemed safe for its intended use, stamp each Class Revolver on the frame of the revolver, a "R" to indicate that the firearm has been through the Enhanced Warranty Service process and is deemed safe for its intended use.

(6) **Cleaning Service** whereby Braztech will professionally clean and test fire each Class Revolver before being returned to the Settlement Class Member.

The foregoing Enhanced Warranty Service will be provided by Braztech at no charge to owners of Class Revolvers. This Enhanced Warranty Service is available one time per Class Revolver and may be taken advantage of at any time: *there is no time limit*. Braztech has already voluntarily implemented the Enhanced Warranty Service as Class Revolvers have been submitted during the Early Warning Program and Class Notice period. To date, approximately 9,200 Class Revolvers have been pre-logged with Braztech for the Enhanced Warranty Service and Class Revolvers have already been submitted to Braztech.

3.       **The Inconvenience Payment**

All Settlement Class Members who do not opt out, who avail themselves of the Enhanced Warranty Service and submit a valid claim during the Claim Period, will

receive the "Inconvenience Payment" of $50.00 per Revolver. The receipt of these Inconvenience Payments is contingent upon actually utilizing the Enhanced Warranty Service and having one's firearm inspected no later than one year after the Effective Date of the Settlement. The purpose of this structure is to incentivize Settlement Class Members to actually submit their Class Revolvers for inspection and repair. All Settlement Class Members who submitted their Revolvers to Braztech in response to the Early Warning Program will be eligible for the Inconvenience Payment. So the time period for pre-logging and submitting revolvers began even before the Settlement was approved and will run for at least a year and a half before the Claim Period for the Inconvenience Payment ends.

      **4.**      **The Class Release**

In exchange for the relief described above, the Plaintiffs and Settlement Class Members will release the Defendants and their affiliated entities from, among other things, any and all claims "arising from, or related in any way to alleged defects in the design or manufacture of the Class Revolvers (or any components thereof) that may result in an unintended discharge." (*Id.* at § III.M.). In other words, the Settlement release here is specific to the subject matter addressed in this Action— alleged design or manufacturing defects that could cause unintentional discharges— and does not contemplate a general release of any and all claims of any kind against these Defendants. Importantly, the Settlement does not release any personal injury or property damage claims. Thus, it is narrowly tailored to address the common issues raised by the alleged defective design or manufacture of the Class Revolvers

and is not an excessively broad general release of the type criticized in other class actions.

### 5.    Exclusion from the Class

The Settlement allowed current owners of Class Revolvers to opt out of the Settlement and the Settlement Class. (D.E. 127-2, p. 29-30). Any Settlement Class Member who wished to seek exclusion from the Settlement Class was advised of his or her right to be excluded, and of the deadline and procedures for exercising that right. As noted above, the timetable proposed by the Settlement afforded members of the Settlement Class more than 90 days within which to decide whether to remain in the Settlement Class, or to seek exclusion from it. Those who wished to pursue individual claims could do so by opting out.

### 6.    Class Representative Service Award

Under the Settlement, Class Counsel reserved the right to seek a reasonable Service Award, not to exceed $7,500.00, for each Class Representative, for his or her service as the named representative of the Settlement Class. Any Service Award approved by the Court up to that amount will be paid separately by Defendants, over and above the relief being offered to the members of the Settlement Class, and in addition to any relief the Named Plaintiffs may receive as a member of the Settlement Class. The Service Award is intended to recognize the time and effort expended by the Class Representatives on behalf of the Settlement Class in assisting Class Counsel with the prosecution of this case and negotiating the relief the Settlement proposes to confer to the Settlement Class Members, as well as the exposure and risk Plaintiffs incurred by participating in and taking a leadership role in this Action. The

Settlement is not conditioned upon the Court approving any Service Award to any named Plaintiff.

### 7.    Attorneys' Fees and Expenses

Under the Settlement, Class Counsel also reserved the right to petition the Court for an award of reasonable attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this case, in an amount not to exceed $5,553,000.00. The Attorneys' Fees and Expenses provision of the Settlement was separately and independently negotiated by the Parties apart from the class settlement provisions, in an arm's-length negotiation overseen by Terrence M. White, acting as mediator. Any Attorneys' Fees and Expenses awarded by the Court, will be paid over and above the relief being paid to the Class.

On June 10, 2019, Class Counsel filed their Unopposed Motion for Approval of Attorney's Fees and Incentive Award. (D.E. 132). That Fee Motion and the supporting memorandum was published on the Settlement Website prior to the objection deadline so that members of the Class could address the fairness of the Attorney's Fees and costs as a component of the Settlement. No objections have been lodged to the entitlement to fees or the amount of the fees requested.

### III.  CLASS NOTICE WAS ADEQUATE

Rule 23(e) of the Federal Rules of Civil Procedure requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). With regard to Rule 23(b)(3) classes, the Rule provides:

the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Thus, the Rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Additionally, due process requires that the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 174 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "In every case, reasonableness is a function of anticipated results, costs, and amount involved." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099 (5th Cir. 1977). Reasonableness also depends on the information available to the parties. *Id.* at 1098.

In this case, the Court approved the form and content of the Parties' proposed Notice Plan as "reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this Action, the terms of the proposed Settlement," and of their rights under and with respect to it. (D.E. 130, p. 29). The Court further concluded that the proposed Notice Plan satisfied "all applicable requirements of law,

including, but not limited, 28 U.S.C. § 1715, Federal Rule of Civil Procedure 23(c), and the United States Constitution (including the Due Process Clause)." (*Id.*)

The Settlement Administrator has now verified that notice was provided in accordance with the approved Notice Plan. (D.E. 135-3, Decl. of Cameron R. Azari in Support of Final Approval). In addition, Settlement Class Members could access the settlement website beginning on March 29, 2019. (*Id.* at ¶ 35). The settlement website allowed Settlement Class Members to view and download copies of the Class Notice, Settlement Agreement, Preliminary Approval Order, and Operative Complaint. (*Id.*) The settlement website also included a summary of important deadlines, instructions for opting-out or objecting, answers to frequently asked questions, and information on how to contact the Settlement Administrator. (*Id.*) Because the Parties complied with the agreed-to notice provisions as preliminarily approved by this Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court finds that the notice provided in this case satisfied the requirements of due process and of Rule 23(c)(2)(B).

## IV. *CERTIFICATION OF SETTLEMENT CLASS*

The Court notes there have been no objections to class certification[1] and no change in circumstances to alter the Court's previous determination that it was "likely" to certify the class based upon the evidence and argument presented. In its

---

[1] As more fully addressed below, one objection was filed with the Court relating to the amount of the Inconvenience Payment, but there was no objection to the certification of the class.

Preliminary Approval Order, this Court set forth in detail the reasons why it appeared that the prerequisites for certification pursuant to Rule 23(b)(3) were established. Based upon these same conclusions of law, the Court will now finally certify the class for the reasons stated in its Preliminary Approval Order. (*See* D.E. 130).

## V. *FINAL APPROVAL OF CLASS ACTION SETTLEMENT*

### A. *The Standards for Judicial Approval of Class Action Settlements*

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Miller v. Rep. Nat'l. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977). A district court, in reviewing a proposed settlement of a class action case must find that there has been no fraud or collusion between the parties in arriving at the proposed settlement and that the proposed settlement is "fair, adequate and reasonable." *Id.* at 428; *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); Rule 23(e)(2). The Eleventh Circuit has outlined several factors that a court must consider in its determination of whether a proposed class-action settlement is fair, adequate, and reasonable:

(1)    the likelihood of success at trial;
(2)    the range of possible recovery;
(3)    the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;
(4)    the complexity, expense and duration of the litigation;
(5)    the substance and amount of opposition to the settlement; and
(6)    the stage of the proceedings at which the settlement was achieved.

*See Bennett*, 737 F.2d at 986.   In weighing these factors, the Court may "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," is "hesitant to substitute its own judgment for that of counsel."   *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

In addition, effective December 1, 2018, Rule 23 itself was amended to add a mandatory but non-exhaustive set of similar final approval criteria:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

For the reasons discussed below, the application of these factors, as well as the analogous *Bennett* factors, compels the Court to find that the proposed Settlement is fair, adequate, and reasonable under the circumstances of this case.

**B.** _**The Settlement Satisfies the Standards for Judicial Approval**_

> **1.** **Class Counsel and Plaintiffs Have Adequately Represented the Settlement Class.**

The first factor that Rule 23(e)(2) now instructs courts to consider when evaluating whether to approve a class settlement is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement.[2] _Id._

Here, the Court has already found that Plaintiffs and Class Counsel have adequately represented the Settlement Class as follows:

> The claims were fully asserted in the Consolidated Complaint, and Class Counsel vigorously pursued the claims of Plaintiffs and the putative class. The Settlement Agreement itself was the product of arm's length negotiations before a professional mediator. More specifically, the parties engaged in five full days of mediation and continued to negotiate thereafter on the details of the formal Settlement Agreement. The parties kept the Court informed of their progress throughout the process

---

[2] The Committee's guidance is consistent with the pre-amendment decisions within this Circuit and others, which have held that plaintiffs and their counsel must have "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." _Francisco v. Numismatic Guaranty Corp. of Am._, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008); _accord Krell v. Prudential Ins. Co. of Am._, 148 F.3d 283, 319 (3d Cir. 1998) (noting that the purpose behind this factor is to assess whether the parties obtained "an adequate appreciation of the merits of the case before negotiating" the settlement).

and the Court is convinced that the agreement was negotiated in good faith.

(D.E. 130, p. 23).  The record continues to support that finding.  Further discovery and litigation would yield no better result.  Under these circumstances, the Court finds that Class Counsel and Plaintiffs adequately represented the Settlement Class and this factor favors the Settlement's final approval.

### 2.    The Settlement is the Product of Arm's-Length Bargaining and Mediation.

In evaluating the fairness, adequacy, and reasonableness of a settlement, a court must ensure that the settlement is not the product of collusion by the negotiating parties.  Fed. R. Civ. P. 23(e)(2)(B); *Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530 & n.6 (11th Cir. 1994).  Here, the Court has already found that the Parties' Settlement Agreement "when viewed in light of the *Bennett . . .* factors, falls within the range of reasonableness." (D.E. 130, p. 14).   The record continues to support the Court's earlier finding.   The Parties' settlement negotiations occurred after substantial discovery, through five separate mediation sessions and the negotiations were overseen by a well-regarded, independent mediator, Terrance M. White.  *See* Fed. R. Civ. P. 23(e)(2)(B), Committee Notes on Rules – 2018 Amendment ("[T]he involvement of a neutral or court-affiliated mediator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"); *accord Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015).  The end result of the Parties' negotiations is a Settlement that offers all Settlement Class Members a reasonable award with any attorneys' fees, expenses, and incentive awards to be paid separately.  Both the record in this case and the

substantive terms of the Settlement reflect a good faith arm's-length bargaining process, which further supports final approval. *See, e.g., Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

### 3. The Relief Provided for the Settlement Class is Adequate.

Under Rule 23(e)(2)(C), the relief provided for the class in the Settlement must be adequate, taking into account:

> (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). These factors are analogous to several of the *Bennett* factors, which the Eleventh Circuit has adopted as the standard for approving a class action settlement. *Bennett*, 737 F.2d at 986. Specifically, the "likelihood of success" and "range of possible recovery" are overlapping issues that are to be addressed by the Court in determining the fairness of a settlement. *Id.*

Whether under Rule 23(e)(2)(C) or the *Bennett* factors, it is not the value or nature of the settlement relief alone that is decisive, but whether that relief is reasonable when compared with the relief "plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing." *Krell*, 148 F.3d at 322 (internal quotation omitted). Accordingly, the relevant inquiry is whether the proposed Settlement affords relief that "falls within th[e] range of reasonableness, [and] not whether it is the most favorable possible result of litigation." *Lazy Oil, Co.*

*v. Witco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997) (internal quotation omitted), *aff'd*, 166 F.3d 581 (3d Cir. 1999). "In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim [ ] that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (internal quotations omitted). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990). It is important that the Court weigh the benefits Class Members will receive from the Settlement against the risks of litigating to final judgment and the Class Members recovering nothing. *Morgan v. Public Storage,* 301 F. Supp. 3d 1237, 1250 (S.D. Fla. 2016).

In this case, if not reasonably settled, the Court finds that there exists real potential for years of further litigation, as well as a possibility that the Defendants could prevail on the merits or defeat contested class certification. Thus, the Settlement offers a reasonable amount of relief available to the Settlement Class, and it does so now— thereby avoiding the risks, costs, and delay inherent in continuing to litigate the Action, including from contested class certification proceedings, additional discovery, dispositive motions, pretrial proceedings, trial and appeal. Moreover, attorneys' fees under the Settlement are to be paid by the Defendants separately and in addition to the relief granted to the Settlement Class Members.

*See* Fed. R. Civ. P. 23(e)(2)(C)(iii) (instructing courts to consider "the terms of any proposed award of attorney's fees"). The fact that the relief available to Settlement Class Members was not conditioned on any amount of attorneys' fees being awarded by the Court further supports the adequacy and fairness of this Settlement.

The process by which the Settlement Class Members shall receive the agreed-upon relief under the Settlement also supports approval. Fed. R. Civ. P. 23(e)(2)(C)(ii) (instructing courts to consider "the effectiveness of any proposed method of distributing relief to the class"). The Enhanced Warranty Service program provides Settlement Class Members (who have not opted out) the ability to have their Class Revolver(s) shipped to Braztech for inspection, repair or replacement, certification as safe to use, cleaning and returned to the Settlement Class Member free of charge. This is straightforward, no different than submitting a revolver for ordinary warranty service (except that shipping is free under the Enhanced Warranty) and involves dealing directly with the distributor, not a third-party administrator. There is also no time limit for the Settlement Class Member to take advantage of the Enhanced Warranty Service; however, if a Settlement Class Member utilizes the Enhanced Warranty Service within one-year from the Effective Date of the Settlement, he or she shall also receive a $50.00 Inconvenience Payment. The purpose of this structure is to incentivize Settlement Class Members to actually submit their Class Revolvers for inspection and repair.

Accordingly, consideration of the Class's likelihood of success and potential recoveries from trial, measured against the complexity and cost of trial and the relief offered by the Settlement, favors the final approval of the Settlement.

## 4. The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

The Settlement also treats Settlement Class Members equally and fairly. *See* Fed. R. Civ. P. 23(e)(2)(D). There is no distinction between the benefits offered, and all Settlement Class Members receive the benefit of the Enhanced Warranty Service automatically. Furthermore, the steps Settlement Class Members must take to receive the Enhanced Warranty Service and the Inconvenience Payment are far from onerous. In fact, for the Enhanced Warranty Service, it is the same or easier and cheaper than the steps they would need to receive ordinary warranty service.

Upon review, the Court also finds that the scope of the release provision required by the Settlement does not operate in an inequitable manner. *See* Rule 23(e)(2)(D), Committee Notes on Rules – 2018 Amendment (instructing courts evaluating Rule 23(e)(2)(D) to consider the extent to which "the scope of the release may affect class members in different ways"). The Settlement contemplates a release specific to the subject matter addressed in this Action—alleged design or manufacturing defects that could cause unintentional discharges—and does not contemplate a general release of any and all claims of any kind against these Defendants. The Settlement does not release any personal injury or property damage claims. Thus, the release is narrowly tailored to address the common issues raised

by the alleged defective design or manufacture of the Class Revolvers and is not an excessively broad general release of the type criticized in other class actions.

### 5. The Substance and Amount of Any Opposition to the Settlement.

There were eleven (11) complete and timely opt-outs and only one (1) objection to the class action settlement notice out of an estimated 255,000 potential Settlement Class Members. The low opt-out and objection rates weigh in favor of granting final approval to the Settlement. *See, e.g.*, *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014); *Morgan,* 301 F. Supp. 3d at 1252 ("In a class of hundreds of thousands, the low number of opt-outs and objections reflects the Class' overall satisfaction with the Settlement."); *Lipuma,* 406 F. Supp. 2d at 1324 ("In determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor.").

The single objection related solely to the amount of the Inconvenience Payment and was based on a miscalculation that over one thousand days had passed since the inception of the Early Warning Program informing owners of the Class Revolvers to cease using their guns. In actuality, the Early Warning Program did not commence until September 2018, approximately 350 days ago. Moreover, the objector noted that he paid $330 for his Class Revolver. The Inconvenience Payment of $50 is, therefore over 15% of the purchase price. No other class member has objected to the amount of the Inconvenience Payment as being inadequate. The amount of the inconvenience payment was a negotiated term and was paid over and above the costs for shipping,

inspecting, repairing, and cleaning Class Revolvers. Therefore, the objection does not support a decision to withhold final approval and certification.

But apart from that, the Court considered the arguments of the single objection at face value, which argued in effect that the inconvenience payment was too low given the time that Class Members were deprived of the use of their Class Revolvers following notice of the defect. The Court acknowledges that the convenience payment could have been higher to take that factor into account. But as the product of negotiation and compromise, the other material terms of the Settlement are far more material and beneficial to the interests of the Class as a whole. In particular, the time period involved is relatively limited as Braztech has already been actively and diligently working on effectuating the requirements of the Settlement, including review and replacement of the Class Revolvers. And the benefits of the Early Warning Program provides all Class Members with material monetary benefits beyond the amount of the Inconvenience Payment. So, in short, the limited objection raised to the Settlement does not preclude the Court from approving the Settlement based on the record as a whole and considering all factors required under Fed. R. Civ. P. 23. The Court finds that the Settlement provides timely and meaningful benefits to all Class Members, which benefits could not have been timely provided had the Settlement not been reached well before trial. Given the nature of the products at issue, this Settlement has real life consequences for all Class Members that addresses serious risks of injury or even death if not promptly addressed. Those material

benefits of the Settlement overwhelm any qualms that a reasonable person may have as to the amount of the Inconvenience Payment.

In sum, having considered the *Bennett* factors, as well as the factors set forth in Rule 23(e), and the response of the Class to the Settlement, the Court finds that the settlement is not the product of collusion and instead is fair, adequate, reasonable, and in the best interest of the parties and all absent members of the Settlement Class.  Final Approval is therefore granted.

### 6. The Class Representative Service Award is Reasonable and Warranted

The requested service award of $7,500 to each Class Representative is appropriate. No objections have been made to the requested award.  The award will be paid by Defendants pursuant to the Settlement Agreement and separate from the relief being offered to the members of the Settlement Class and will be in addition to any relief the Named Plaintiffs may receive as a member of the Settlement Class. Courts routinely approve service awards to "compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006) (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)) (collecting cases); *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1218 (11th Cir. 2018) ("We do not view granting a monetary award as an incentive to a named class representatives as categorically improper.").  In light of the Class Representatives' efforts in this case and in the absence of any objection from the Settlement Class Members, the Court finds that this incentive award is appropriate and reasonable

and is therefore finally approved. *See North Star Capital Acquisitions, LLC v. Krig*, Nos. 3:07-cv-264-J-32MCR, et al., 2011 WL 65662, at *6 (M.D. Fla. Jan. 10, 2011) (approving a $5,000 incentive award); *Muransky*, 905 F.3d at 1219 (rejecting objector's challenge to a $10,000 incentive award).

### C.   *The Motion for Attorneys' Fees and Costs is Granted*

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Under the Settlement, Class Counsel has negotiated an award of attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this case, in the amount of $5,553,000.00. This award is to be paid separately from the relief being offered to the Settlement Class Members and equates to approximately 14% of the $37,995,000 value of the benefits created by the proposed Settlement. "It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1358 (citing *Camden I Condominium Assn. v. Dunkle*, 946 F.2d 768, 771 (11th Cir.1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

The Court finds that 14% is materially below the amounts regularly negotiated in class actions within the Eleventh Circuit. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33 1/3% of settlement value); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) (approving 33% award, and noting "[t]he requested fee is

entirely consistent with fee awards in comparable cases nationwide, within the Eleventh Circuit, and within the Southern and Middle Districts of Florida."); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) (approving 31 1/3% fee award); *Black v. Winn-Dixie Stores, Inc.*, No. 09-cv-502, 2011 WL 13257526, at *5 (M.D. Fla. June 17, 2011) (approving 30% fee award payable from common fund); *Morgan,* 301 F. Supp. 3d at 1252-54 (approving 33% fee award payable from common fund).

In addition, no objections have been filed to the requested attorneys' fee award. That is not surprising given that the fee award reasonably reflects the amount of time, effort and attention that Class counsel devoted to the case, considering the risks involved. And most importantly, Class Counsel attained a tangible and substantial result for Class Members. All these factors fully support the amount of fees and costs requested through this Settlement. *See, e.g., Wolff,* 2012 WL 5290155, at *3 ("Unlike cases in which attorneys for a class petitioned for a fee award after obtaining non-monetary relief for the class, such as in the form of 'coupons,' Class Counsel here created a wholly cash common fund.").

As a result, the Court finds that the negotiated attorney fee is reasonable, fair and proper. Accordingly, the Court grants the Motion for Final Approval and approves the $5,553,000.00 award of attorneys' fees and costs to be paid pursuant to the terms of the Settlement Agreement.

## VI. FINAL APPROVAL ORDER AND DECREE

Upon consideration of the Motions, the arguments raised by the parties at the Preliminary Approval hearing and at the Fairness Hearing, as well as all matters of record, the Court finds that there is good cause to finally approve the proposed Settlement. In accordance with the requirements of Rule 23(e), the Court concludes that the Settlement, including the award of attorneys' fees and service award to the Class Representatives, is fair, reasonable, and adequate. Thus, the Court determines that it is appropriate to grant the Motions. Accordingly:

1.      Plaintiff's Motion for Final Approval of Class Action Settlement (D.E. 135) is **GRANTED**;

2.      **Jurisdiction.** Because due, adequate, and the best practical notice has been given and all potential settlement class members have been given the opportunity to exclude themselves from or object to the Settlement, the Court finds and concludes that it has personal jurisdiction over all Settlement Class Members and that venue is proper. The Court also finds and concludes that it has subject matter jurisdiction over this action, including, without limitation, jurisdiction to approve and enforce the Settlement, grant final certification to the Settlement Class, and dismiss the Action on the merits and with prejudice, all while retaining jurisdiction to enforce the Settlement as provided below.

3.      **Final Class Certification.** The Settlement Class is hereby finally certified for settlement purposes only, as it fully satisfies all the applicable requirements of Rule 23 and due process. The Settlement Class is comprised of:

All individuals in the United States, including its territories and possessions, who owned one or more Class Revolver(s) on March 15, 2019.

The term "Class Revolvers" includes all Rossi brand .357 Magnum and .38 Special revolvers of the following models—R35102, R35202, R85104, R97206, R97104, R46202, R46102—manufactured by Forjas Taurus between January 1, 2005 and December 31, 2017, as indicated by the serial number stamped on the frame of the revolver beginning with the letters Y, Z, A, B, C, D, E, F, G, H, I, J, or K.

Excluded from the Settlement Class are (w) all state, local, or federal bodies or agencies, etc., or Persons in an official capacity; (x) the District Judge and Magistrate Judge to whom the Action is assigned and any appellate judge assigned to any appeal in the Action, together with any member of their staff and immediate families; (y) any Successful Opt-Out, and (z) any other Person who has been recognized by Order of the Court as excluded from the Settlement Class for any reason.

4.      **Final Settlement Approval.**  The Court finally approves the terms of the Settlement as being a fair, reasonable, and adequate resolution of the dispute between the Parties.  The Parties are hereby directed to implement and consummate the Settlement according to its terms and provisions.  The Parties are also directed to take all steps necessary and appropriate to provide the Settlement Class Members with the benefits to which they are entitled under the Settlement.

5.      **Binding Effect.**  The terms of the Settlement and of this Final Order and Judgment shall be forever binding on the Plaintiffs, Forjas Taurus, Braztech, and all Settlement Class Members who did not timely exclude themselves from the Settlement Class as reflected in Paragraph 3 above, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors.  The terms of the Settlement and of this Final Order and Judgment shall have *res judicata* and

other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons or entities, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Settlement's Release.

6. **Release.** The Court hereby approves, incorporates and adopts the Release set forth in Section III.M of the Settlement. The Release hereby is made effective as of the Effective Date, and will forever discharge the Released Parties of and from any liability to the Plaintiffs and the Settlement Class Members, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors, arising in whole or in part from the Released Claims as defined in the Settlement.

7. **Retention of Jurisdiction.** Without in any way affecting the finality of this Final Order and Judgment, the Court expressly retains jurisdiction: (a) as to the administration, consummation, enforcement, and interpretation of the Settlement, including the Release, and the Final Order and Judgment; (b) to resolve any disputes concerning settlement class membership or entitlement to benefits under the terms of the Settlement; and (c) over all Parties hereto, including members of the Settlement Class, for purposes of enforcing and administering the Settlement and this Action generally, until each and every act agreed to be performed by the Parties has been performed in accordance with the Settlement.

8.    **No Admissions.**   Neither this Final Order and Judgment, nor the Settlement, nor any other document referred to herein, nor any action taken to carry out this Final Order and Judgment, is, may be construed as, or may be used as an admission or concession by or against the Released Parties as to the validity of any claim or defense or any actual or potential fault, wrongdoing, or liability.   Entering into or carrying out the Settlement, and any negotiations or proceedings related to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to the Released Parties' denials or defenses, and shall not be offered or received in evidence in any action or other tribunal for any purpose whatsoever, except as evidence to enforce the provisions of the Settlement and this Final Order and Judgment; provided, however, that the Settlement and Final Order and Judgment may be filed in any action brought against or by the Released Parties to support a defense of res judicata, collateral estoppel, release, waiver, good- faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

9.    **Attorneys' Fees and Incentive Award.**   The Court finally approves and appoints Plaintiffs' Counsel as "Class Counsel."   Plaintiffs' Motion for Approval of Attorneys' Fees and Incentive Award (D.E. 132) is **GRANTED**. The Court finally approves the agreed attorneys' fees and expense award to Class Counsel in the amount of $5,553,000.00, to be paid pursuant to the terms of the Settlement Agreement. The Court also finally approves the payment of $7,500.00 to each Class

Representatives as a service award, to be paid pursuant to the terms of the Settlement Agreement.

10. **Final Order and Judgment.** This Final Order and Judgment fully and finally disposes of all claims stated on a representative (class) basis by the Class Representatives against Defendants in this action. The personal-injury claims of Plaintiffs Ernest and Suzanne Bedwell, on behalf of themselves and their minor child, that are stated on an individual (not class) basis have been stayed and shall remain so until further Order of the Court. All class claims having been resolved as provided herein, the Court finds that there is no just reason for delay in entry of final judgment on the class claims. Fed. R. Civ. P. 54(b). Indeed, the Court finds that it is in the best interest of the settlement class to have a Final Judgment entered at this time and not to have entry be delayed pending resolution of the Bedwells' individual claims. Therefore, this Order shall constitute the Final Order and Judgment as to all class claims in this action, and the Clerk is directed to enter a Final Judgment accordingly. The Clerk shall not, however, close this case, as it shall remain open pending resolution of the Bedwells' individual claims.

**IT IS SO ORDERED** in Miami, Florida, this 6th day of September, 2019.

_____
**EDWIN G. TORRES**
**United States Magistrate Judge**